COLE et al. v. MAYNE.

(Circuit Court, W. D. Missouri, W. D. November 4, 1901.)

No. 2,513.

1. WRONGFUL DEATH—STATUTE GIVING RIGHT OF ACTION—PERSONS ENTITLED TO SUE.
  Rev. St. Mo. 1899, § 8820, being a part of the law relating to mines, provides that, for any injury occasioned by a violation of any of the provisions of the article, "a right of action shall accrue to the party injured for any direct damages sustained thereby; and in case of loss of life

¶ 1. Statutory provisions as to death by wrongful act, see note to Atchison, T. & S. F. R. Co. v. Wilson, 1 C. C. A. 33.

\* \* \* a right of action shall accrue to the widow of the person so killed, his lineal heirs or adopted children, or to any person or persons who were, before such loss of life, dependent for support on the person or persons so killed." *Held*, that under the rules of construction applied by the Supreme Court of the state to such statute, and others in pari materia, such section gave separate and alternative rights of action for loss of life, first, to the widow, if there be one; second, to the lineal heirs or adopted children; and, third, to persons dependent—and that, where there was a widow de jure living, no action could be maintained by the children of the deceased.

2. SAME.
An allegation in a petition by children, in an action under such statute, that the widow of the deceased was at the time of his death separated from him, and living in open adultery with another man, does not show a right of action in plaintiffs, and especially where the action was commenced in such time that it might be finally determined before the expiration of the one year within which an action may be brought under the statute, since, even if proof of such facts might defeat the recovery of damages by the widow, it would not destroy her right of action, and, moreover, an adjudication of such facts in the action to which she was not a party would not be conclusive against her in a subsequent action.

8. MINING—ACTION FOR VIOLATION OF STATUTE—SUFFICIENCY OF PETITION.
Under Rev. St. Mo. 1899, § 8822, providing that "the owner, agent or operator of any mine shall keep a sufficient supply of timber, when required to be used as props, so that the workmen may at all times be able to properly secure the said workings from caving in; and it shall be the duty of the owner, agent or operator to send down all such props when required," the petition in an action to recover for the death of a miner, based on the alleged violation of such provision—the action being purely statutory and in derogation of the common law—must allege every fact necessary to bring the case within the statute; and a petition alleging generally that defendant negligently failed to timber the mine, and that he failed to use care in timbering the same, but which does not allege that he failed to "keep a sufficient supply of timber, when required to be used as props," or that he failed to "send down all such props when required," is insufficient to state a cause of action.

At Law. On demurrer to petition.

Jno. J. Wolfe, J. J. Hitt, and E. E. Chesney, for plaintiffs.
Galen & A. E. Spencer, for defendant.

PHILIPS, District Judge. This case has been submitted on demurrer to the petition. The substantive averments of the petition, inter alia, are that the plaintiffs are the only surviving heirs (minor children) of Marion I. Cole, who died from injuries received in a lead and zinc mine of the defendant at Joplin, Mo. The petition avers that the mother of the plaintiffs, the first wife of the said Marion I. Cole, was divorced from him —— years before his death; that he was afterwards married to one Mary Jane ——, who survives him as his widow; that said Mary Jane Cole, before and up to the time of the death of said Marion I. Cole, lived apart from him, and in open adultery with one John Wall, in Jasper county, Mo.

The first question to be decided is as to the right of these plaintiffs, the minor children of the deceased, to maintain this action independent of the widow. Counsel for plaintiffs concede and assert that the right of action in these plaintiffs is based upon section 8820 of the Missouri Statutes of 1899, which is as follows:

"For any injury to persons or property occasioned by any violation of this article or failure to comply with any of its provisions, a right of action shall accrue to the party injured for any direct damages sustained thereby; and in case of loss of life by reason of such violation or failure as aforesaid, a right of action shall accrue to the widow of the person so killed, his lineal heirs or adopted children, or to any person or persons who were, before such loss of life, dependent for support on the person or persons so killed, for a like recovery of damages sustained by reason of such loss of life or lives: provided, that all suits brought under this article shall be commenced within one year after any cause of action shall have accrued under this article and not afterward: and provided further, that any person entitled to sue under this section for loss of life or lives may recover any sum not exceeding ten thousand dollars."

The plain grammatical construction of this statute, which names the beneficiaries disjunctively, gives the right of action, first, "to the widow of the person so killed"; next "to his lineal heirs or adopted children"; and, third, if there be no widow, lineal heirs, or adopted children, "to any person or persons who were, before such loss of life, dependent for support on the person or persons so killed." The Supreme Court of the state of Missouri, in Hamman v. Central Coal & Coke Company, 156 Mo. 232, 56 S. W. 1091, has so construed this statute. The court say:

"The statute is complete within itself, and in no way depends for its enforcement upon any other statute not a part or amendatory thereof. It gives to the widow a right of action, the only limitation upon which is that she bring her suit within one year after the death of her husband. It says that in case of the death of the husband 'a right of action shall accrue to the widow of the person so killed, his lineal heirs or adopted children,' etc., which clearly means, first, to his widow; next, to his lineal heirs or adopted children, and not to them jointly."

The contention of plaintiffs' counsel that this declaration of the court was mere obiter dictum is not sustained by the facts of the case. It is quite apparent from the decision that one of the contentions was that the petition should have made some allegation with respect to the children not being made parties, for the court says:

"The petition shows that the action was brought within the prescribed time, and no allegations with respect to the children of the deceased were necessary. Here the right of action was not affected by the fact that the deceased left children surviving him, notwithstanding he did in fact do so."

The necessary conclusion from which is that the statute does not give a joint cause of action to all the designated beneficiaries, but an exclusive cause of action to the parties designated, if living, in their order. The logical result therefrom is that no cause of action under this statute arises in favor of the children where the deceased left a widow. The only limitation, as asserted by the court supra, placed by the statute upon her right of action, is that the suit shall be brought within one year after the death of her husband. As said by Judge Sanborn, speaking for the Court of Appeals, in Western Union Tel. Company v. McGill, 57 Fed. 700, 6 C. C. A. 521, 21 L. R. A. 818:

"Where such a statute giving a new right of action for damages specifies the person or class of persons for whose exclusive benefit the damages are to be recovered, no damages to any other person or class of persons can be allowed in the action based on the statute."

The Legislature, in giving this cause of action in contravention of any common-law right, saw fit to designate the widow of the deceased as the first person to maintain the action. The recognized definition of the term "widow" is "a woman who has lost her husband by death; a wife that outlives her husband." Wherever a right by law has been attached by reason of widowhood, there must be some law by which it is divested, or it will remain. Commonwealth v. Powell, 51 Pa. 441. The fact that a wife may desert her husband and commit adultery with a third person does not disentitle her as the widow of the deceased husband. In the absence of a divorce dissolving the bonds of matrimony, which in this country is a civil contract, her status is that of his widow, and she would be entitled to dower in his estate in the absence of a statute forfeiting the right on account of desertion and adultery. It is true that the Queen's Bench, in Stimpson v. Wood & Son, 59 N. S. Law Term Report, 218, held, under Lord Campbell's act, in an action brought, at the relation of the widow of the deceased, to recover damages for his death, that she could not recover, where at the time of the husband's death she was living apart from him, and in open adultery with another. This was based on the theory that the design of that act was to secure compensation to those who by law were entitled to support from the deceased, or had reasonable ground of expectation of support at his hands while living. There is a radical difference between Lord Campbell's act and the statute under consideration. The former is for the benefit of the husband, wife, parent, and child. The designated parties, if living, are joint beneficiaries in the right of action. Each named beneficiary has a separate independent interest. The executor or administrator brings the action in the name of the beneficiary for his or her proportion, and the jury makes the apportionment on the basis of compensation, dependent upon the relation of dependence and expectancy of the beneficiary in the life of the deceased. But under a statute like the one in question, giving a sole right of action to a designated person, eo nomine, to the exclusion of other designated beneficiaries, so long as the first in right under the statute is living, no misconduct of such preferred person constitutes a disqualification to maintain the action, unless imposed by the Legislature which gives the right. In the absence of some judicial construction of the terms employed by the Legislature, imposing a disability, which it may be assumed was in the mind of the Legislature in employing such terms, it is not the province of the court to enlarge or to restrict the language of the statute.

The Supreme Court of this state, in construing statutes in pari materia has established a rule of construction which should be followed in this jurisdiction. In Philpott v. Missouri Pacific Railroad Company, 85 Mo. 164, the court, in construing section 2121 of the then state statute (now section 2864, Rev. St. Mo. 1899), under the general damage act, which gave a cause of action for the death of an unmarried minor to the father and mother of the deceased, held that the emancipation of the minor son by his parents was no de-

fense to an action by them for his death. Judge Black, speaking for the court, said:

"The statute is remedial, and is designed to be compensatory in part. But it is more than this. The case at bar demonstrates the fact that it cannot be wholly compensatory [as held in the English case supra], for the amount of the recovery, being fixed, as it is, is altogether out of proportion to the value of the services of the son for the remainder of the period of his minority. The law is also designed to guard and protect persons and the traveling public against the wrongful acts thereby prohibited. Whether the amount awarded is denominated damages, compensatory damages, liquidated, as was said in Coover v. Moore et al., 31 Mo. 574, or a penalty, is not material. The law, as well as being compensatory, is of a penal and police nature, and can, without objection, subserve both purposes at one and the same time. The right to recover is therefore not made to depend upon services which the deceased could have rendered to the persons suing. The emancipation of the son by the parent, if alleged and proved, constitutes no defense."

This same principle was recognized and asserted in Hennessy v. Bavarian Brewing Company, 145 Mo. 104, 46 S. W. 966, 41 L. R. A. 385, 68 Am. St. Rep. 554, in which it was held that the remarriage of the widow, and the assumption by the stepfather of the obligations of a natural father to his child, releasing the mother from liability for necessaries furnished the child, did not forfeit her right under such statute to recover damages for the negligent killing of her child. The court said that, as the statute intended to transmit the rights of the deceased child to the father and mother, the relation between them as husband and wife does not affect their rights as parents; that the dissolution of the marital relation between them does not dispense with the necessity of joining both in the litigation; and that the remarriage of the wife after the dissolution of the former marital relation makes no difference in her rights as the mother of the deceased. This is aptly illustrated by the case of Buel v. St. Louis Transfer Company, 45 Mo. 562. In that case the child of Ruth and Samuel F. Buel was killed by the negligence of the defendant company. The father and mother were divorced. The father refusing to join in the suit, the action was brought alone by the divorced wife. It being held that the cause of action was joint in the parents of the child, after the lapse of one year from the death of the child, the petition was amended, so as to make the father a coplaintiff, instead of a codefendant. The court said:

"There is no force in the objection that Mr. and Mrs. Buel had been divorced prior to the accrument of the cause of action sued on. They do not sue as husband and wife, but simply as parents. The divorce did not affect the fact of parentage. The statute does not give the action to the husband and wife, as such, but to the father and mother, as the parents of the deceased minor."

Mrs. Buel having in the meantime remarried to one Crockett he was made a party plaintiff with her. It was held (Crockett v. Same, 52 Mo. 457) that the suit could be properly maintained by the mother and her husband Crockett, joining her as coplaintiff. The court said in Hennessy v. Bavarian Brewing Company, 145 Mo. 114, 46 S. W. 968, 41 L. R. A. 385, 68 Am. St. Rep. 554, that the case is direct authority—

"For holding that the mother's right to maintain an action of this character is vested in her because of her relation of mother to the deceased, and that such right is personal to her, and is not affected by a divorce from her former husband, or by her remarriage. * * * Her marriage the second time did not sever her relation of mother to her son, nor take away from her the right which the statute transmitted to her, as mother, to recover damages which her son might have recovered if he had survived the injury."

By analogy, the same principle is announced by the Supreme Court under the homestead law, which gives the right of a homestead to the head of a family. In Brown v. Brown's Administrator, 68 Mo. 388, it was held that, while the marriage relation exists de jure, the husband is the head of a family, although composed only of his wife, who has deserted him, and that, although living apart from the husband at the time of his death, the wife, even where there are no minor children, is entitled to a homestead. The learned judge (Napton) who wrote the opinion refused to follow the decisions in Texas, holding that in such case the wife forfeited the right to take a homestead. He said:

"The application in special cases—like the present, for example—may seem to lead to injustice and a departure from the leading object of all homestead exemptions, which is obviously to protect a home for the wife and children, or either. But the prevention of such consequences must be left to legislative action, and we therefore concluded that, whilst a marriage de jure exists, the husband is the head of the family, though composed only of his wife, who has left him, and consequently that the wife, though living apart from him at the time of his death, is, in the absence of any minor children. entitled to the homestead."

The principle of this ruling was followed in Whitehead v. Tapp, 69 Mo. 415, in which it was held that a man who has a wife is the head of a family, within the meaning of the homestead act. And it makes no difference that his wife may have deserted him and may be residing in another state, and that he himself may be living in improper relations with another woman. The court said:

"Anterior to the date of obtaining the divorce from the first wife, it was perfectly within Arnes' power to forgive her shortcomings and condone her roving fancy, and the mere fact that this never occurred did not alter the status of the parties inter sese. Arnes was still a married man, and consequently the head of a family. Being so, evidence that improper relations were maintained between Arnes and the woman who lived in the same house with him was irrelevant, and properly rejected."

Applying these rules of construction, established by the Supreme Court of the state in respect of statutes in pari materia, how can we deny that the exclusive right of action is given to the widow, when the statute gives it to her eo nomine? Especially so in view of the fundamental postulate laid down by the court that such statutes are punitive in their character. They do not repose upon the English idea that government is either paternal or tutelary, but upon the police power of the state to assert such public policy as, within the legislative discretion, is best calculated to promote the public welfare, by protecting the property, lives, and limbs of its citizens. The Legislature might have made the widow of the deceased employé, or the child, or other relatives, the sole beneficiary of the right of action, or it might have given the fund recoverable to the public school fund. Therefore any conception counsel may have of the deserts of

children or other relatives of the deceased is wholly sentimental, and foreign to the matter of construing the statute as the Legislature has made it read.

The contention of counsel that the language employed in designating the third class of beneficiaries supports the proposition that the controlling thought of the Legislature in enacting this statute was to compensate for the loss of support consequent upon the death of the benefactor is not admissible. The third clause does not say "or to any other person," etc., but the language is, "or to any person or persons who were, before such loss of life, dependent for support upon the person so killed." The preceding clauses give the right of action, first, to the widow; then, to the children, as such. The third clause designates a class, rather, whose right of action is made to depend upon the fact that during the life of the employé particular persons were dependent upon him for support. The statute imposes no such conditions upon the right of action by the widow. On the contrary, it is made to depend alone upon the fact that she is the widow of the deceased. Consequently the language of the third clause neither qualifies nor characterizes the right of action given to the widow. In short, the right of action given to the respective beneficiaries depends upon different states of fact. There is a marked difference between a statutory cause of action and the amount of recovery predicable of a statute like this. Within the limitation of $10,000, the amount the widow may be awarded lies within the discretion of the jury, guided by the facts of the particular case.

There is another consideration which renders this proceeding by these plaintiffs untenable. This suit was brought within about 3 months after the death of Marion I. Cole. Under the state Code the cause might have gone to final trial within 6 months, or less, after his death. Had the jury found the issues for the plaintiffs, they might have returned a verdict for $10,000. Thereafter, within the 12 months, the widow could sue the defendant for $10,000 damages. The judgment in favor of the children would constitute no defense to her action. Not having been a party to that suit, she was neither bound nor concluded thereby. On issue joined between her and the defendant company on the plea of desertion and adultery, if interposed by the defendant, she might, to the entire satisfaction of the jury, disprove the imputation. The jury thereupon might award her $10,000 damages. When this demurrer was interposed, and when this opinion is written, the one-year limitation to such action has not expired. No case can be found in which it has been adjudged that the beneficiary first given the right of action under a similar statute had forfeited the right of action, when such person was not a party to the suit.

The demurrer presents two other objections to the petition: First, that section 8822 of the Missouri Statutes of 1899 does not apply to lead and zinc mines, but only to coal mines; and, second, that the petition does not state the necessary facts to give a cause of action under said section. The section is as follows:

"The owner, agent, or operator of any mine shall keep a sufficient supply of timber, when required to be used as props, so that the workman may at

all times be able to properly secure the said workings from caving in; and it shall be the duty of the owner, agent or operator to send down all such props when required."

Without determining whether this section applies solely to coal mines, or whether the court can take judicial cognizance of the fact that, because of the marked difference in the structure and methods of working lead and zinc mines and coal mines, the conclusion is warranted that it would be impracticable to apply this section to lead and zinc mining, or whether or not the duty of the mine owner, agent, or operator to furnish a sufficient supply of timber is conditioned upon request first made by the miners for such timber, as contended for by defendant's counsel, it is sufficient here to say that the statute contemplates a method of mining in which the roof wall of the mine is secured by props. And as the statute imposes no other duty upon the owner, agent, or operator than to keep on hand a sufficient supply of timber for such props, and to send them down to the miner when required, the inference is clear that it is the duty of the workmen to put the props in place, and to see that they are properly placed. Clearly enough, therefore, it is essential that the petition, to constitute a cause of action under this statute, should distinctly allege a failure on the part of the proprietor to keep a sufficient supply of timber, when required to be used as props, or that he failed to send down to the miners such props when required. The only allegations of the petition in this respect are:

"That the roofs of said drifts were insecure, and required timbering in order to make the same secure and safe for the laborers who work in said drifts; that the defendant failed to timber said mine as was his duty to do; * * * that, having knowledge of such danger, the defendant wholly failed and neglected to warn him of such, as it was the duty of defendant to do, and failed to use caution and care in timbering said roof of said drift, as it was the duty of defendant to do."

It is not alleged that the defendant failed to "keep a sufficient supply of timber, when required to be used as props;" or that the defendant failed "to send down all such props when required," or the equivalent thereof. The negligence imputed to the defendant is a failure to timber said mine, and that he failed to use caution and care in timbering the roof of the drifts. "Statutes in derogation of the common law are to be construed strictly, and one who seeks to maintain an action which was within the prohibition of the common law must be able to point to a statute which in plain and explicit terms authorizes the action to be maintained. A plaintiff who sues on a right of action given by statute must present a case clearly within the statute which creates the right." Hamilton v. Jones, 125 Ind. 178, 25 N. E. 192.

The demurrer is sustained