In re Application for Support of Minor Children, OLIVE DEBROT, Appellant, v. MARION COUNTY, Appellee.

**Dependent children of widow:** SUPPORT: STATUTES. A widow is one
1  whose husband is dead and who has not remarried, and not one
who has been divorced, within the meaning of the act of the 35th
General Assembly, providing that if a mother of dependent children
is a widow and is unable to properly care for them the court may
fix the amount necessary for that purpose to be paid by the county.

**Same:** LIABILITY OF PARENTS FOR SUPPORT OF CHILDREN. The common
2  law liability of either or both parents to support their minor chil-
dren exists, and is not affected by their divorce.

*Appeal from Marion District Court.*—HON. LORIN N. HAYS, Judge.

THURSDAY, FEBRUARY 19, 1914.

APPEAL from an order of the district court denying the application of one Olive Debrot for an order on the Board of Supervisors of defendant county for the support of her three minor children.—*Affirmed.*

*Lorenzo D. Teter*, for appellant.

No appearance for appellee.

DEEMER, J.—The case comes to us upon appeal from an order overruling a demurrer to the answer to an application made by Olive Debrot for allowance by the board of supervisors of defendant county for the support of her minor children. The facts recited in the application are substantially as follows: The applicant was twice married; Lester Adams, aged seven years, being a child by her first husband,

and Martha Debrot, aged five years, and Flora Debrot, aged two years, being children by her second husband. After her marriage to the said Debrot, and for some time prior to October, 1910, they lived in the state of Kansas, where at said time and place the said Debrot deserted petitioner and said minor children, and went to live in the state of Connecticut. Some time thereafter, the exact date of which is not disclosed, he procured a divorce from petitioner in said state of Connecticut on notice by publication only, and he has continued to live in said state until the present time. After being so deserted, the petitioner and said children came from the state of Kansas to Marion county, Iowa, where they have since continued to live. She is poor, broken in health, and unable to properly care for said minor children without financial aid, but otherwise is a suitable and proper guardian for said children, and it will best conserve their interest and welfare to be left at the home of their said mother, and under her care and custody.

The answer, to which the demurrer was addressed, was substantially as follows: ''The said county alleges that the petitioner was formerly a resident of Kansas, where her second husband, Debrot, deserted her and said minors in October, 1910, and went to live in the state of Connecticut, in which state, on notice by publication only, said Debrot procured a divorce from petitioner, and that said Debrot is still living in the state of Connecticut; and therefore the said county alleges that the petitioner does not come within the purview of chapter 31, Acts 35th General Assembly, and is not entitled to an order thereunder.''

The application was made under chapter 31 of the Acts of the 35th General Assembly, which amends section 254-a20 of the Code Supplement of 1907; the section after its amendment reading as follows:

Section 254-a20. Commitment. When any child of the age stated in section two (2), hereof (under the age of sixteen years) shall be found to be dependent or neglected,

within the meaning of this act, the court may make an order committing the child to the care of some suitable state institution, or to the care of some reputable citizen of good moral character, or to the care of some industrial school, as provided by law, or to the care of some association willing to receive it, embracing in its objects the purpose of caring for and obtaining homes for dependent and neglected children, which association shall have been accredited as hereinafter provided. If the court finds that the mother of such dependent or neglected child is a widow, and if the court further finds that such mother is poor and unable to properly care for said child, but is otherwise a proper guardian, and that it is for the welfare of such child to remain at home, the court may enter an order finding such fact and fixing an amount of money necessary to enable such mother to properly care for such child, and thereupon it shall be the duty of the county board of supervisors through its overseer of the poor or otherwise, to pay to such mother, at such times as said order may designate, the amount so specified for the care of such dependent or neglected child until further order of the court; providing, however, that the amount so paid for the care of any such child shall not exceed the sum of two dollars per week; and provided further that such payment shall cease upon any such child attaining the age of fourteen years. The court may, when the health or condition of the child may require it, cause the child to be placed in a public hospital or institution for treatment of special care, or in a private hospital or institution which will receive it for like purposes without charge. Any mother whose husband is an inmate of any institution under the care of the board of control, shall, for the purposes of this act, be considered a widow, but only while such husband is so confined.

Section 254-a14 of the Code Supplement defines dependent or neglected children as follows:

For the purpose of this act, the words 'dependent children' or 'neglected children' shall mean any child who for any reason is destitute or homeless or abandoned; or dependent upon the public for support; or who has not the proper parental care or guardianship; or who habitually begs or receives alms; or who is found living in any house of ill fame,

or with any vicious or disreputable person; or whose home, by reason of neglect, cruelty or depravity on the part of its parents or guardian or other person in whose care it may be, is an unfit place for such child; and any child under the age of ten years, who is found begging, or giving any public entertainment upon the street for pecuniary gain for self or another; or who accompanies or is used in aid of any person so doing; or who, by reason of other vicious, base or corrupting surroundings, is, in the opinion of the court, within the spirit of this act.

Sections 1, 3, 5, 15, and 17 of chapter 14, Acts 33d General Assembly, read as follows:

Section 1. Contributory Dependency Defined. When any child is found to be dependent or neglected, as defined by section 254a14 of the 1907 Supplement of the Code, the parent, parents, person or other person or persons having the care, custody, or control of such child, or any other person or persons who shall by any act or omission of duty encourage, counsel, or contribute to, the neglect of such child, or who, by reason of willful neglect of any duty owing by said parent or parents, person or persons to such child, is or are responsible for its neglect or dependency, shall be guilty of contributory dependency, and proceeded against as provided herein.

Section 3. Decree—Probation Bond. Whenever the court upon hearing finds a person guilty of contributory dependency, the court may enter a judgment determining such facts and requiring such person to do or to omit to do any act or acts complained of in the petition; and for the purpose of enforcing its judgment the court, in its discretion may continue the proceedings from time to time and release such person on probation during the period of two years. The court may further, in its discretion, as part of its judgment require such person to enter into a bond to the state of Iowa, with or without surety, in such sum as the court may direct, to comply with the orders of the court.

Section 5. Proceeding on Bond—Disposition of Sum Recovered. If the court be satisfied by information or evidence on oath, that at any time during the two years the person proceeded against has violated the terms of the court's order or the terms of said bond, the court may direct the county attor-

ney to institute proceedings on said bond in any court having jurisdiction of the sum fixed in the said bond, the sum so recovered on such bond shall be turned over to the chief probation officer to be by him safely kept and expended for the care and maintenance of such child under the direction and discretion of the court.

Section 15.  In every cause in the juvenile court the court shall investigate whether every person responsible for the care, custody, maintenance, education, medical treatment and discipline of the child or children involved is doing his full duty by such child or children, and, in case the court finds that the parents, or other persons *in loco ·parentis* are not doing their duties the court shall try all lawful and proper means under this act to make them do so, giving them aid and assistance in case it be deemed necessary.  The court may declare a child abandoned by one parent while it may not be by the other.  In case the parents are divorced and the one having the custody is adjudged to have abandoned the child then the ability and propriety of the other parent shall be considered.

Section 17.  This act shall be liberally construed in favor of the state for the purpose of the protection of the child from neglect, or omission of parental duty toward the child by its parents, or other persons standing *in loco parentis,* and further to protect the child from the effects of the improper conduct or acts of any person which may cause, encourage or contribute to the dependency and neglect of such child, although such person is in no way related to such child.

Section 254-a25 reads as follows:

In any case in which the court shall find a child dependent, neglected or delinquent, it may, in the same or subsequent proceedings, upon the parents of said child or either of them, being duly summoned or voluntarily appearing, proceed to inquire into the ability of such parent or parents to support the child or contribute thereto, and if the court shall find such parent or parents able to support the child or contribute to its support, the court may enter such order or decree as shall be according to equity in the premises, and may enforce the same by execution or in any way in which a court of equity may enforce its orders or decrees.

And section 254-a28 provides:

This act shall be construed liberally to the end that its purpose may be carried out, to wit: That the care, custody and discipline of a child shall approximate as nearly as may be that which should be given by its parents, and in all cases where it can properly be done, the child to be placed in an approved family home and become a member of the family by legal adoption or otherwise.

These are the only statutes which are claimed to be relevant, and they are taken from the enactments of various sessions of the Legislature, commencing with the Thirtieth and running down to and including the Thirty-Fifth. By reason of this fact it is difficult to so read them as a whole as to make them entirely consistent and harmonious. It is manifest, however, that sections 1 and 2, Acts 35th General Assembly, must be read in connection with section 254-a20 (Acts 30th General Assembly, chapter 11, section 8) and section 254-a14 (Acts 30th General Assembly, chapter 11, section 2), as amended by sections 1, 3, 5, and 15, Acts 33d General Assembly, chapter 14, heretofore quoted. Whether or not section 17 of the last-cited amendment and section 16 of chapter 11, Acts 30th General Assembly (Code Suppl. section 254-a28) should also be considered is a matter of considerable doubt, as they are expressly made to apply to the acts in which they are found.

1. DEPENDENT CHILDREN OF WIDOW: support: statutes.

Reduced to its final analysis, the ultimate question presented by this record is: Is the applicant in this case a widow within the meaning of chapter 31, Acts 35th General Assembly? She is undoubtedly the mother of the children; but it affirmatively appears that her second husband, who is the father of two of the children, is still living, although he is a nonresident of the state, and it does not appear in the pleading that the first husband, the father of the other child, is dead. In other words, the pleadings do not show that applicant is a widow as that term is ordinarily used. Accord-

ing to the lexicographers, a widow is a woman who has lost her husband by death, and has not married again. See Webster's New International and the Standard Dictionaries. See, also, *Cole v. Mayne* (C. C.) 122 Fed. 836; *Whitsell v. Mills,* 6 Ind. 229. *In re Ensign's Estate,* 103 N. Y. 284 (8 N. E. 544, 57 Am. Rep. 717); *Tyler v. Ass'n,* 145 Mass. 134 (13 N. E. 360). Colloquially divorced women who have not been married again are sometimes spoken of as "grass widows,".or widows bewitched. In construing wills and contracts, the word "widow" has occasionally been held to include a divorced woman; but in each and all of these cases it was due to the peculiar phraseology of the instruments. *In re Conway's Estate,* 5 Pa. Dist. Ct. 332; *Wait v. Wait,* 4 N. Y. 95; *Rittenhouse v: Hicks,* 10 Ohio Dec. 759. And a comparison of the cases just cited with those immediately preceding will demonstrate there is a lack of harmony upon the latter proposition.

Coming directly to the act in question, it will be observed that section 2 thereof undertakes to define the word "widow," or to extend its ordinary meaning, by providing, in substance, that a mother whose husband is an inmate of any of the state institutions shall, for the purposes of the act, be considered a widow so long as the husband is confined therein. The effect of this section in broadening the term is, according to all the canons of construction, to exclude all other persons who might, by interpretation or construction, be thought to be within the terms or spirit of the original act, although not within its letter. The old maxim, *"Expressio unius est exclusio alterius,"* is especially applicable to statutes, and of special significance where attempt is made to specifically broaden the scope of a general term. *Miller v. Miller,* 44 Pa. 170; *Perkins v. Thornburgh,* 10 Cal. 189; *Page v. Allen,* 58 Pa. 338 (98 Am. Dec. 272).

Aside from this, however, it appears from a reading of all the statutes quoted that the common-law liability of both

husband and wife for the support of their children is recog-

2. Same: liability of parents for support of children.  nized, and provisions are made to enforce this liability by appropriate proceedings. This liability of either or both parents to support their minor children is not, of course, affected by a divorce obtained by one from the other. It continues in spite of the divorce until the children reach their majority, or until the death of the parents. *Pretzinger v. Pretzinger,* 45 Ohio St. 452 (15 N. E. 471); *Courtright v. Courtright,* 40 Mich. 633; *Thomas v. Thomas,* 41 Wis. 229; *Brow v. Brightman,* 136 Mass. 187.

There is no allegation in the application that the father of the children is unable to support them, and the only show-ing with reference to Debrot is that he is living in the state of Connecticut, and there procured a decree of divorce from his wife on service by publication. This divorce did not sever the relation of parent and child, although it may have dis-solved the marital relations theretofore existing. We must construe the act in question without reference to the present residence of one of the parents, for, if the mother is a widow within the meaning of the statute under which relief is sought, it is entirely immaterial where her divorced husband lives, or what his financial ability.

In interpreting the statute, we may, however, consider the effect of a holding that a divorced woman is a widow, notwithstanding the fact that her former husband and the parent of her children is a resident of the state, and amply able to provide for and support his children. In the con-struction of these statutes there is no middle ground. A divorced woman is either a widow or she is not, and the fact that her former husband is a nonresident of the state is of no consequence in arriving at a solution of that problem.

It is of some consequence, however, to observe that, if the divorced husband and father were a resident of this state, and possessed of ample means, the divorced wife might still rely upon the provision of the statute quoted. Of course

these laws were enacted primarily for the benefit of dependent children; but there was no thought of relieving the parents from their obligation to support their offspring. Indeed, the contrary distinctly appears.

The ruling on the demurrer was correct, and the judgment must be and it is *Affirmed.*

LADD, C. J., and GAYNOR and WITHROW, JJ., concurring.