STATE OF IOWA, Appellee, v. LEWIS E. WEYMILLER, Appellant.

**HUSBAND AND WIFE:** Wife Desertion—Abatement—Divorce Proceeding. Divorce proceeding by a husband, to which the wife appears and asks for an allowance to herself and child, may not be pleaded in abatement of an indictment based on facts occurring prior to such divorce proceeding.

**TRIAL:** Instructions—Correct but not Comprehensive. Instructions which are correct as far as they go are all-sufficient, in the absence of a request for further elaboration.

**HUSBAND AND WIFE:** Wife Desertion—"Good Cause" Defined. "Good cause" for failure on the part of a husband to support his wife means a sufficient cause—one which affords a *legal* excuse for the failure to support—not one which would justify *"a man of ordinary self-respect and pride"* in *refusing to support.*

**HUSBAND AND WIFE:** Wife Desertion—"Willfulness" as Element. The element of "willfulness" in the offense of failure of a husband to support his wife is not established *per se* by proof (1) that the wife was destitute, and (2) that the husband failed to support her.

*Appeal from Allamakee District Court.*—H. E. TAYLOR, Judge.

MAY 13, 1924.

THE defendant was indicted for the crime of deserting his wife and minor child under sixteen years of age. He appeals from a conviction and sentence thereon.—*Reversed.*

*Richard J. Organ* and *Dayton & Eaton,* for appellant.

*Ben J. Gibson,* Attorney-general, *Herbert A. Huff,* Assistant Attorney-general, and *Elmer F. Pieper,* County Attorney, for appellee.

FAVILLE, J.—Appellant and his wife were married in 1919. A daughter was born in 1920. At the time of the marriage, appellant was about nineteen years of age, and his wife about seventeen. Shortly after the marriage, the parties went to Milwaukee to live. It appears that they did not reside there long, but returned to Allamakee County, where they lived for a time with the wife's parents. It seems to have then been arranged there that appellant should attend the University of Minnesota, and that his wife and daughter should remain with the wife's parents. He entered the university in the fall of 1920. He was at home during the Christmas vacation, and once during the summer of 1921. During this period, the wife and child remained with the wife's parents, and appellant made no contribution to their support. It appears that, in October, 1921, appellant was indicted for desertion and failure to support his wife and child. This indictment was subsequently dismissed, and an arrangement was entered into between the parties by which appellant was to pay $40 per month for the support of said dependents. Under this arrangement, appellant did thereafter contribute to the support of the wife and child, until some time in June, 1922, but has made no contribution since said time. About June 23, 1922, appellant wrote his wife a letter, the pertinent paragraphs of which we quote.

"I am sorry that I have not sufficient money, as yet, to send you the allowance for the month of June and cannot state just when I will be able to do so. I am through with school, as you know, due to the fact that I can no longer borrow money for your support and the support of myself, as I have been doing thruout the past school year, but I must get out and make my

own living. Work is mighty scarce everywhere now and I am sure that I cannot earn sufficient money to send you forty dollars per month and enough more to pay my board and room, but if you and Virginia will come to Council Bluffs to live with me I think that we can get along on what I can earn; anyway I will do the best I can. I can get light housekeeping rooms where we can live until we see fit to have something better. Write me soon and tell me when you can come, so that I can make the necessary arrangements for a place to live and to send you money enough to get here with.''

The wife replied to this letter, and, among other things, said:

''* * * it will take considerable deliberation on my part before I can give you a satisfactory answer, however, I am thinking very seriously of coming to Council Bluffs. * * * I cannot possibly get there before a month that is by Aug. 1, then I will come to Council Bluffs if all goes well. * * * If this information suits your fancy alright with me but I cannot come before Aug. 1, nohow, but will keep in touch with you from now on.''

She testified that she made preparations to go to Council Bluffs.

About ten days later, appellant instituted a divorce action against his wife, in Pottawattamie County, and caused notice of the same to be served on her in Allamakee County.

Appellant testified that the money he sent his wife had all been borrowed by him from his father.

It appears that the wife had no independent means and no property whatever. At the time of the trial, appellant's wife was attending school, studying stenography, and the daughter was living with the wife's parents.

I. Appellant interposed a plea in abatement, alleging that he had commenced an action for divorce against his wife in Pottawattamie County, and that his wife had appeared in said action and filed answer therein, and sought an allowance for support for herself and minor child in said case.

1. HUSBAND AND WIFE: wife desertion: abatement: divorce proceeding.

The court properly overruled this plea in abatement. The facts upon which the indictment was returned in Allamakee County arose before appellant commenced the

divorce action in Pottawattamie County. Appellant could not, by commencing a divorce action in Pottawattamie County, deprive the district court of Allamakee County of jurisdiction to try appellant for the offense alleged to have been committed by appellant in that county.

There was no error here.

II. Appellant complains of the rulings of the court on objections to the cross-examination of appellant as a witness.

No particular rulings are urged in argument. The trial court with propriety might have restricted the cross-examination somewhat, but we do not find such abuse of discretion in this regard as requires a reversal of the case because thereof.

III. Appellant challenges Instruction No. 5, wherein the court defined the term "destitute condition." Appellant's complaint is not so much that the instruction fails to correctly state the law, as that it was not pertinent to the evidence in the case.

2. TRIAL: instructions: correct but not comprehensive.

No instruction on the subject was requested by appellant. The instruction given was not an erroneous statement of the law applicable to the case. We cannot reverse for failure of the court to amplify it, although it were much better if this had been done. The instruction was in line with the rule recognized in *State v. Weyant*, 149 Iowa 457; *State v. Conway*, 182 Iowa 1236; *State v. Manley*, 197 Iowa 46.

IV. Instruction No. 6 is as follows:

"You are instructed that 'good cause,' as used in these instructions, does not mean a slight misunderstanding, or petty whim or quarrel, but it means a substantial cause, such as you jurors can say that, under such a condition, a man of ordinary self-respect and pride would be justified in refusing to support his wife and child while such conditions remained."

3. HUSBAND AND WIFE: wife desertion: "good cause" defined.

This instruction cannot be sustained. The "good cause" which will excuse a husband from performing his duty to provide for his wife must be a substantial cause resulting from the acts, declarations, and conduct of the wife. It is doubtful if any reason that would not justify a judicial separation would be such a "good cause" as would justify abandonment and nonsupport. *State v. Stout*, 139 Iowa 557, and cases cited therein.

See, also, *State v. Dvoracek,* 140 Iowa 266. As said in the *Stout* case:

"We do not think that it was for the jury to say what would be sufficient cause, but that instructions on the subject should have been given, pertinent to the evidence."

In the instruction given, the jury was left to wander at will in the fields of conjecture, whim, caprice, and speculation, to discover, if possible, "a condition" under which "a man of ordinary self-respect and pride would be justified in refusing to support his wife and child." The instruction made no reference to the evidence in the case, nor was it aided by anything contained in any other instruction. "Good cause" is not always to be determined by what would affect a man of "self-respect and pride." A jury might readily entertain divergent opinions as to what would meet the requirements of such a variable standard. The term "good cause," as used in the statute, means a sufficient cause. It must be one that affords a legal excuse for not providing for the wife and child. Whether such "good cause" does or does not exist in any case must be determined by the particular facts disclosed in the evidence. It is not a matter for the speculation of the jury as to what "a man of self-respect and pride" might do.

The instruction cannot be sustained.

V. The court gave the jury the following Instruction No. 7:

"You are instructed that, if you find beyond a reasonable doubt, from the evidence introduced upon the trial of this case, that the defendant, in Allamakee County, Iowa, within the time 4. HUSBAND AND specified in these instructions, deserted Dorothy WIFE: wife desertion: "will-fulness" as element. L. Weymiller or Virginia Rose Weymiller, the said Dorothy Weymiller being his wife, and the said Virginia Rose Weymiller being then his legitimate child, under the age of sixteen years, and they being then in destitute or necessitous circumstances, or that he neglected to furnish such wife or child necessary and proper food, clothing, or shelter, without good cause; then such facts, if they be the facts, would establish a 'willfulness' of such acts, within the meaning of the statute."

The statute, Code Supplement, 1913, Section 4775-a, under

which this action is prosecuted, provides that a person who shall, without good cause, *willfully* neglect or refuse to maintain or provide for his wife or child, such dependents being in a destitute condition, shall be punished as provided by law. It is obvious that, in order to sustain a conviction under this provision of the statute, it must be established that the dependent was "in a destitute condition;" that the neglect or refusal to provide for the dependent was "without good cause;" and that the act was done "willfully." All three of these essentials must be established. Under the instruction as given by the court, the jury was told that, if the dependents were in a destitute condition, and the failure and neglect to provide for them were without good cause, "then such facts, if they be the facts, would establish a willfulness of such acts, within the meaning of the statute." The thought of the court seems to have been that one essential ingredient of the offense, to wit, willfulness, was necessarily established, as a matter of law, by proof of the other two essentials, namely: that the dependents were in a destitute condition, and that the failure to maintain and provide for them was "without good cause."

As said in *State v. Dvoracek,* supra, the expression "without good cause" seems to "relate to the conduct or relations between the parties, rather than to the matter of failure to discharge the duty of rendering support. This latter is covered by the requirement that the neglect shall be willful. * * * Whether the omission is willful must be determined from the evidence adduced, precisely as in any other case."

Of course, the purpose and intent of a party may be inferred from his acts and conduct and the circumstances surrounding him. Such matters are proper for consideration in determining whether an act is done willfully or intentionally. But it does not follow that, in a case of this kind, the essential ingredient of willfulness is established by the mere proof of the destitute condition of the dependent and a failure to maintain such dependent without good cause therefor. As stated in the *Dvoracek* case, the "good cause" referred to in the statute relates to the conduct or relation between the parties. There might readily arise a case where a dependent was destitute, and where there was nothing *in the relation between the parties* that would afford

a good cause for failure to maintain and provide, and yet where the element of willfulness would be entirely wanting. The failure to provide might result from an inability to procure employment, or from sickness, or from numerous other causes. In such event, however, the failure would not be willful, although the other essentials of the crime might be present.

The instruction was erroneous. The court should have correctly instructed the jury as to each of the essential ingredients of the crime charged, as pertinent to the evidence in the case.

VI. It is urged that the verdict is without sufficient support in the record.

In view of a possible retrial of the case, we do not deem it proper to comment upon the evidence at this time.

For the errors pointed out, the case will be—*Reversed and remanded.*

ARTHUR, C. J., EVANS and PRESTON, JJ., concur.