STATE OF IOWA, Appellee, v. MARTIN F. SAYRE, Appellant.

NOVEMBER 20, 1928.

C. H. Miller, for appellant.

John Fletcher, Attorney-general, and Carl Missildine, County Attorney, for appellee.

KINDIG, J.—Appellant and Abbie Sayre were husband and wife, and lived together in Greene County before moving to Des Moines. Afterwards, Mrs. Sayre went back to Greene County, where she secured a divorce from appellant in 1922, and in that proceeding was awarded the custody of the minor children, hereafter named. Subsequent to this, she returned to Des Moines, and appellant went to Greene County, where he now resides.

It is claimed by the State that the defendant-appellant, between the first day of January, 1925, and October 28, 1927, deserted his said minor children, Carmen and Paul, ages 10 and

12 years, respectively. This crime is within the purview of Section 13230 of the 1927 Code, which reads as follows:

"Every person who shall, without good cause, willfully neglect or refuse to maintain or provide for his wife, she being in a destitute condition, or who shall, without good cause, abandon his or her legitimate or legally adopted child or children under the age of sixteen years, leaving such child or children in a destitute condition, or shall, without good cause, willfully neglect or refuse to provide for such child or children, they being in a destitute condition, shall be deemed guilty of desertion, and, upon conviction, shall be punished by imprisonment in the penitentiary for not more than one year, or by imprisonment in the county jail for not more than six months."

Succeeding the foregoing statutory provision is Section 13235 of the same Code, declaring:

"Proof of the desertion of wife, child, or children in destitute or necessitous circumstances or of neglect to furnish such wife, child, or children necessary and proper food, clothing, or shelter, shall be prima-facie evidence that such desertion or neglect was willful."

I. The State bases its ground for conviction upon testimony given by Mrs. Sayre and Luella, an adult daughter of the divorced parties'. In substance, this evidence is that Luella worked for wages, and paid her mother $8.00 every week for board and room, added to which was the salary earned by the latter through employment in the Rollins Hosiery Mills. That aggregate income received by Mrs. Sayre amounted to approximately $1,200 each year. Mrs. Sayre, the minor children, and Luella lived in a house, the rent of which was $20 per month. Both the mother and adult daughter asserted under oath that there were many times when the children went without proper clothing. Particularly was this true of the boy, who had insufficient footwear, so that his shoes did not protect his bare feet from the ground in the winter. Underclothing was needed, and the family did not have enough fuel with which to warm the house.

During the period of time named in the indictment, the

defendant contributed approximately $81.50 to the support of his minor children.

"Destitute condition," as used in Section 13230, supra, does not mean "naked," "unhoused," or "actual starvation." *State v. Weyant*, 149 Iowa 457; *State v. Herring*, 200 Iowa 1105. Apt phraseology contained in *State v. Weyant*, supra, is:

"To sustain the charge that the wife was left destitute, it was not incumbent upon the State to show that she was left naked or unhoused, or in a condition of actual starvation. To say that a deserted wife is destitute means no more than to say that she is in a condition of great need, a state of extreme poverty, or is without money or property upon which she can rely for her support. Such condition is by no means inconsistent with her possession of food for a day or for a week, or with the fact that some friend has opened his door to give her shelter. A widow or an abandoned wife may indeed have a humble cottage which affords her a place in which to live, but brings in no income, or she may have a cow, which she cannot sell without depriving herself or her babe of needed sustenance, or a few articles of furniture which are necessary to her convenience or comfort, and still be destitute, within the statutory meaning. If it were otherwise, and by the cheap expedient of providing his wife and child with a few dollars' worth of groceries for immediate use, an unworthy father and husband may desert his family and hold himself immune from prosecution, the statute is indeed a very flimsy piece of legislation, and should be repealed at once. A wife is entitled to support at the hands of the husband, and both law and common humanity charge him with the duty of maintaining his own infant child. It does not lie in his mouth to say: 'Here is food to keep you from starvation for the next thirty days, and henceforth I absolve myself from all responsibility for your support. Your father will not allow you to go to the poorhouse. Moreover, your hands are strong, and the kitchens of your neighbors afford a ready field for service in which you can earn a living for yourself and the child of our marriage.' It was to prevent and punish such outrage against humanity and the marriage obligation that the statute was enacted, and its force and effect should not be nullified by any nicety of construction."

II. Nor is the "destitute condition" removed because private or public charity intervenes to save the child from nakedness, the ravages of the physical elements, or starvation; and this is true even if the "private charity" is administered by relatives or near friends. *State v. Herring,* supra, appropriately says:

"We cannot, however, agree with counsel for appellant that criminal responsibility for the failure to support his child could not be found on the ground that it was not in a destitute condition, merely because his parents, or the mother's parents, did not permit it to be in actual want, 'naked or unhoused, or in a condition of actual starvation.' * * * There was no claim that appellant had made any arrangements with his parents for the support of the child, upon which it, or the mother for it, could rely."

Said issue of "destitute condition" was, therefore, properly submitted to the jury in this case.

III. Appellant's excuse for not having done more was that he was physically unable to earn additional money. Cause of this alleged incapacity was said to be an internal hernia and a dislocation of the vertebra. At least some proof was furnished by the State in rebuttal of this justification.

There was earned by the defendant, within the time named, $317, out of which he purchased his clothes, paid doctor bills for himself, and met the expenses incurred when traveling by train from Greene County to Des Moines, for the purpose of attending court. Defendant was a building contractor on a small scale, and did carpenter and cement work, painting, and paper hanging. According to the record, he apparently appeared strong and robust. No medical expert testified that he could not pursue his occupation as a contractor, and there were other circumstances tending to indicate his ability to feed and clothe his children. Manifestly, the controversy raised by the foregoing facts was properly submitted to the jury.

"Good cause," as used in the legislative enactment above quoted, means a substantial or legal cause, as distinguished from an assumed or imaginary pretense. *State v. Hill,* 161 Iowa 279;

*State v. Morgan,* 146 Iowa 298; *State v. Conway,* 182 Iowa 1236; *State v. Weymiller,* 197 Iowa 1273.

IV. Nevertheless, the defendant contends that he is entitled to a reversal because of Instruction VIII, given to the jury by the trial court. That charge consists of these statements:

"In determining whether the children were in a destitute condition, as herein defined, the fact, if it be a fact, that said minor children were supplied with food, clothing, and shelter by others than the defendant does not establish the fact that said children were not destitute. It is for you to say, after fully and fairly considering all the evidence and all the facts and circumstances, whether the said children were destitute, and this fact you must find affirmatively, beyond a reasonable doubt."

Complaint is more specifically directed to the portion of the court's language embodied within the following phrase: "By others than the defendant." To put the thought in another way, the defendant insists that his former wife, the mother of the minor children, was equally liable with him for the support and care of the minor son and daughter. So he concludes that there is support in the record to show that she did sufficiently provide for them to the extent that they were not "in a destitute condition," within the meaning of the statute aforesaid. Resultantly, he argues that the court should have submitted the idea to the jury accordingly, but, rather than doing this, that tribunal excluded from the consideration of the fact-finding body the support coming from any person except the defendant. Thereby, such contributions on the part of the wife were not presented as a cause relieving the otherwise "destitute condition" of these children.

We believe there is merit in the defendant's proposition. Parenthetically, it is repeated that the indictment here was not for wife desertion, but non-support of the children. Each parent is liable for the minor child's maintenance. Code of 1927, Sections 5298 and 10459. *Johnson v. Barnes,* 69 Iowa 641; *Davies Dry Goods Co. v. Retherford,* 195 Iowa 635; *Stamp v. Stamp,* 196 Iowa 1133.; *Debrot v. Marion County,* 164 Iowa 208. Further discussion of this well settled principle of the law would

1340

be a mere repetition. Previous opinions in the cases just cited have plainly covered the field at this juncture.

V. These parties, as previously stated, are divorced. A divorce, however, does not change the theory of the law in this respect; for the common-law liability of each parent to support the children continues, nevertheless. *Debrot v. Marion County, supra*, states:

"This liability of either or both parents to support their minor children is not, of course, affected by a divorce obtained by one from the other. It continues in spite of the divorce until the children reach their majority, or until the death of the parents."

Therefore, the wife had a constant continuing duty to support these children, and when she performed that obligation, she did not thereby necessarily lay the foundation for a criminal prosecution against the father because he failed to discharge his liability, and in that way make inessential the fulfillment of her responsibility. Consequently, the children were not in a "destitute condition," as contemplated by the statute, if the mother, in the discharge of her maternal duty, sufficiently supported them. Error appears in the court's instructions because this thought was not embodied therein.

Questions relating to an accounting between the husband and wife for these expenditures (as to whether or not one can be had on any doctrine, we do not now decide) are not here involved, nor is there embraced within this controversy a proceeding to collect alimony. *State v. Herring, supra*.

Hence, because of the error pointed out, the judgment of the district court is reversed, and the cause remanded for a new trial.—*Reversed and remanded*.

Stevens, C. J., and Evans, Faville, and Wagner, JJ., concur.