## W. S. POINDEXTER *v.* STATE.

*(Nashville.* December Term, 1916.)

1. **FINES. "Penalty." "Fine." Constitutional provisions.**

Acts 1915, chapter 120, and sections 2, 3, 4, and 6 thereof, making it a misdemeanor for a person chargeable with the care of a child under sixteen years of age to willfully and without good cause neglect or fail to provide for such child according to his means or to leave it destitute or in danger of becoming a public charge, conferring jurisdiction of such offenses primarily upon the juvenile court, and conferring authority upon the juvenile and criminal courts as a penalty to exact of the defendant a bond. commensurate with defendant's means for the financial support of the child, are not violative of Const. art. 6,. section 14, providing that no fine shall be laid on any citizen of this State that shall exceed $50, unless it shall be assessed by a jury of his peers, who shall assess the fine at the time they find the fact if they think the fine should be more than $50, since, while a "fine" is always a "penalty," a "penalty" is not always a "fine;" a "penalty" when recovered ordinarily going to the statutory beneficiaries, while a "fine" goes to the State, and a fine being proportioned to the gravity of the offense punished, and the financial ability of a defendant to pay is not ordinarily considered. (*Post, pp.* 383-390.)

Acts cited and construed: Acts 1915, ch. 120, 125.

Cases cited and approved: State v. Latham, 188 S. W., 534; Kelly v. Davis, 38 Tenn., 72; United States v. Nash (D. C.), 111 Fed., 525; Hudson v. Granger, 23 Misc. Rep., 401;

Constitution cited and construed: Art. 6, sec. 14.

2. **PARENT AND CHILD. Failure to support. Evidence. Relevancy.**

A father cannot escape the duty to support his child placed upon him by Acts 1915, chapter 120, by voluntarily relinquishing the

Poindexter v. State.

child and permitting it to remain away from him in the mother's custody; so that a controversy as to alleged efforts of defendant to induce his wife who had the child to return and live with him was immaterial in a prosecution under the statute. (*Post, pp.* 390, 391.)

3. **CRIMINAL LAW.   Venue.**

As the primary purpose of Acts 1915, chapter 120, was protection of a dependent child by punishing the delinquent father and to deter others from being guilty of a same wrong, and not to prevent the neglected child from becoming a charge on the county, the venue of such offense is properly laid in the county where the father resides, and not in the county where the child and its mother were located. (*Post, pp.* 391, 392.)

Cases cited and approved:   State v. Gillmore, 88 Kan., 835;   Commonwealth v. Acker, 197 Mass., 93;   State v. Baurens, 117 La., 136.

Case cited and distinguished:   Latham v. State, 188 S. W., 534.

FROM DAVIDSON.

Error to the Criminal Court of Davidson County.— A. B. NEIL, Judge.

H. E. PENDLETON and E. J. WALSH, for appellant.

WM. H. SWIGGART, JR., Assistant Attorney-General, and A. R. GHOLSFN, for the State.

MR. JUSTICE GREEN delivered the opinion of the Court.

The plaintiff in error was indicted for failure to care for his child, a minor under the age of sixteen

years.  He was found guilty, sentenced to imprison-
ment for eleven months and twenty-nine days, and
ordered to execute a bond for $240 to secure the
payment of $20 per month toward the support of the
said child.  He has appealed in error to this court.

The prosecution was had under chapter 120 of the
Acts of 1915.  The first question arising is on the
constitutionality of the statute raised below by motion
to quash the indictment.

The statute declares that it is a misdemeanor for
any person chargeable with the care of a child under
sixteen years of age to willfully and without good
cause neglect or fail to provide for such child accord-
ing to his means or to leave it destitute or in danger
of becoming a public charge.

Section 2 of the act confers jurisdiction of such
offenses primarily upon the juvenile court, and other
sections of the act necessary to be considered are as
follows:

"Sec. 3.  Be it further enacted, that when said
defendant is arraigned before said judge, it shall be
the duty of the judge to read the complaint to the
defendant and ask him whether he is 'guilty' or 'not
guilty' of the charge.  Should the defendant plead
'guilty,' the judge may require the defendant to give
security by a written undertaking with one or more
sureties approved by the court, to the effect that
the defendant will pay to the clerk of the juvenile
court weekly, semimonthly, or monthly, as the court
may order, for the space of one year thereafter, a

Poindexter v. State.

reasonable sum of money, to be specified by the court, for the support of said child after an examination to determine the defendant's ability to pay, and the necessities of the child, which bond must be fixed by the court in a sum not less than the aggregate amount of payments to be made for one year, and upon the giving of said undertaking, the defendant must be discharged, or the court in its discretion, where the charge is a first offense and the facts of the case seem to warrant leniency, may release the defendant upon his own recognizance after the defendant has entered into a bond as hereinabove provided, but without sureties. If the defendant pleads 'not guilty,' the judge shall bind the defendant over for the action of the grand jury under bond in a sum not exceeding one thousand dollars, to secure his appearance at the trial.

"Sec. 4. Be it further enacted, that upon indict-ment and trial, or upon arraignment, if the defendant pleads 'guilty,' or is found guilty upon competent testimony, it shall be the duty of the judge of the criminal court to determine and fix the amount to be paid by the defendant as hereinabove provided, and to require the defendant to give security as provided in section 3 of this act, or release said defendant on his own recognizance as therein provided, and if the undertaking, as provided in said section, be given, the defendant must be released, but if not, the court must sentence such defendant to the county workhouse for a period not exceeding eleven months

and twenty-nine days and to pay the costs of the cause.

"Sec. 5.   Be it further enacted, that at any time during defendant's confinement, such defendant may and shall be released from his term of imprisonment upon giving the bond as herein provided, or in the discretion of the court, upon his own recognizance as hereinabove provided.

"Sec. 6.   Be it further enacted, that the undertaking mentioned in section 3 of this act is forfeited upon the failure of the defendant to make any periodical payment as therein provided, whereupon a forfeiture may be taken upon said bond as now provided by law in criminal cases, and the sum collected in the action shall be paid to the clerk of the juvenile court for the benefit of such child, or in the discretion of the court, the defendant may be arrested and sentenced to the workhouse pursuant to the provisions of this act, or he may be arrested and held for the action of the grand jury, if said bond was originally executed in the juvenile court, or he may be committed or re-committed to the workhouse to serve out the unexpired portion of his original sentence, if previously sentenced and released on bond or recognizance."

It is said that the act is in violation of section 14 of article 6 of the Constitution of Tennessee, providing that:

"No fine shall be laid on any citizen of this State that shall exceed $50, unless it shall be assessed by a jury of his peers who shall assess the fine at the

time they find the fact, if they think the fine should be more than $50.''

The argument is that the authority conferred upon the judges of the juvenile courts and criminal courts to exact of the defendant a bond commensurate with defendant's means for the financial support of the child is in effect authority to such judges to assess a fine in excess of $50 in contravention of the section of the Constitution quoted. In the case before us, as we have stated, a bond of $240 was required of plaintiff in error.

In the case of *State* v. *Latham,* 188 S. W., 534, this court considered and upheld the validity of chapter 125 of the Acts of 1915. Chapter 125 of the Acts of 1915 is in all respects similar to the statute before us, except that the former makes it a misdemeanor for a husband to fail and neglect to provide for his wife.

In *State* v. *Latham* it was insisted that chapter 125 of the Acts of 1915 violated the constitutional provision (section 18 of article 1), that the legislature shall pass no law authorizing imprisonment for debt. The court held that the obligation of the husband for the wife's support attempted to be enforced by the statute was not a debt in the sense of the Constitution, but was a duty demanded of him by society, and added that the performance of this duty might be enforced by law ''by the imposition of a penalty for default.''

It is contended for the plaintiff in error that this court in *State* v. *Latham* thereby recognized the exaction of the bond as a penalty, and that in authorizing the imposition of a penalty in excess of $50 by the judge of the juvenile or criminal court the act exceeding constitutional limitations.

The word "penalty" was used advisedly by the court. It is perhaps the best descriptive word that could have been used under the circumstances, although the bond exacted differs in some particulars from an ordinary statutory penalty. Clearly the pecuniary punishment authorized by these statutes cannot be assimilated to a fine as that word is used in section 14 of article 6 of the Constitution. This court recognized a distinction between a "penalty" and a "fine" in *Kelly* v. *Davis,* 38 Tenn. (1 Head.), 72, and while the words were often used loosely and indiscriminately, they are by no means identical. A distinction is preserved in many statutes, constitutional provisions, and decisions. See cases collected in a note, 18 Ann. Cas., 883.

While a fine is always a penalty, a penalty is not always a fine. *United States* v. *Nash,* (D. C.), 111 Fed., 525. A penalty when recovered ordinarily goes to the statutory beneficiaries while a fine goes to the State. *Hudson* v. *Granger,* 23 Misc. Rep., 401, 52 N. Y. Supp., 9.

A fine is proportioned to the gravity of the offense punished, and the financial ability of a defendant to pay is not ordinarily considered. The penalty or

Poindexter v. State.

bond exacted of a delinquent father under this act is measured by his ability to pay and the flagrancy of his offense is not taken into account.

A defendant failing to pay or secure a fine may be imprisoned and compelled to work out the amount of the same at the statutory rate of compensation. Were it not for section 14 of article 6 of the Constitution, an impecunious defendant upon whom a large fine had been imposed might be imprisoned for years at the will of the judge alone who tried him. Under the statute before us here, the judge is powerless in any event to imprison a defendant for a longer period than 11 months and 29 days. The duration of imprisonment is not affected by the amount of the bond required.

Other differences might be noted between a fine and the pecuniary penalty provided in chapter 120 of the Act of 1915. Sufficient has been said to indicate that said penalty is not a fine in the sense of the Constitution. The criminal judge accordingly was correct in overruling the motion to quash.

It is said that the evidence preponderates against the verdict in this case. The court does not think so.

The plaintiff in error, Poindexter, was married in 1901 to a Miss Carsey, of Clarksville. He brought her to Nashville, his home, and they appear to have gotten along reasonably well until about 1912 or 1913. One child was born to this union, a little girl about 9 years of age at the time of the trial below.

---

In 1912 or 1913 plaintiff in error failed in business, and since that time has undoubtedly been in financial straits most of the time.    By agreement apparently, his wife left Nashville in the spring of 1913 and went to her home in Clarksville, taking the little girl with her.    The wife's parents seem to be well-to-do people, and they have provided for her and the child for the last 3 years.    The plaintiff in error, according to his own testimony, has contributed little or nothing to the support of his wife and daughter since they have been away.

There was a great controversy in the testimony below as to the alleged efforts of plaintiff in error to induce his wife to return to Nashville and live with him.    He claims that he has at all times desired her to return and that she was unwilling to come back for the reason that he could not now support her in the style that she had formerly lived.    She denies that she was unwilling to return, and challenges the good faith of his endeavors to bring her back.

The most of this controversy is immaterial to the issue before us.    We are not called upon here to go into the merits of the disagreement between the husband and wife. This is not a prosecution for failure to support the wife, but for failure to support the child.

Regardless of the blame for the separation of the father and mother and the continuance of the separation, the statute imposes duties on the father respecting his child under the circumstances appearing in this case.

It seems that plaintiff in error is now earning about $1,000 per annum. He has made no effort to get the custody of his child, although he said on the trial that he wants her. He has apparently acquiesced in the keeping of the girl by her mother. The mother testified that she had made demands on him to contribute something to the child's support, which he had refused, and the jury evidently credited this statement of hers.

A father cannot escape the duty to support his child placed upon him by law by voluntarily relinquishing the child and permitting it to remain away from him in the mother's custody. This is particularly true where the mother is without means, and demands have been made upon the father to assist in the child's support. If the father makes efforts through court proceedings or otherwise to acquire possession of the child or a right to enjoy its companionship and fails, a different question would be presented. Perhaps, if the mother had means of her own and no demands had been made on the father to aid the child, the case might be different. As this matter stands, this father has made no attempt to get the child, and there have been no court proceedings to deprive him of the child's custody to which he is primarily entitled. At present he is charged with its support, and the jury have found that he has refused to aid in this behalf.

It is furthermore insisted in behalf of plaintiff in error that the venue of this offense was in Mont-

gomery county, where the mother and child were located, and that the courts of Davidson county were without jurisdiction to determine this controversy.

There is an apparent conflict in the decisions on the question of venue in proceedings under statutes such as the one upon which this prosecution is based. The cases are collected in a note under *State* v. *Gill-more,* 88 Kan., 835, 129 Pac., 1123, as reported in 47 L. R. A. (N. S.), 218.

It is said in Ruling Case Law that this conflict may be explained by the different provisions of the statutes; that some of the statutes have for their chief and primary purpose to prevent the neglected wife or child from becoming a charge upon the county; that prosecutions under such statutes should be brought in the county where the wife or child resides, since the purpose is to prevent that county from having to support the wife or child. Other statutes have for their primary purpose the protection of the dependent wife or child by punishing the delinquent husband and father to deter others from being guilty of the same wrong. Under the latter statutes the venue should be laid in the county where the husband or father resides and where he is under legal as well as moral obligation to provide for his family. See 8 R. C. L. section 366, p. 311, notes, 10, 11.

Our statutes are of the last-named class.

In *Latham* v. *State,* supra, Justice WILLIAMS said: "The primary and more immediate object of our statute, on construction, appears to be to deter hus-

bands from leaving their wives to indure privation and to compel contributions by them to the support of their wives in the furnishing of necessities; the secondary purpose, expressed, in an alternative form in the first section of the act, being to protect society in respect of the wife tending to become a charge on the public."

In view of this construction that has been given our statute, we think the venue of this offense was properly laid in Davidson county, where the father resided.    In support of this conclusion see *Commonwealth* v. *Acker,* 197 Mass., 93, 83 N. E., 312, 125 Am. St. Rep., 328; *State* v. *Baurens,* 117 La., 136, 41 South., 442.

There are other assignments of error which have been considered, but are not deemed meritorious. They do not call for a detailed discussion in this opinion.

It results that the judgment of the criminal court of Davidson county is affirmed, and the cause will be remanded to that court for further proceedings.