STATE OF IOWA, Appellee, v. HAROLD ANDERSON, Appellant.

No. 38926.

December 13, 1929.

*R. J. Organ,* for appellant.

*John Fletcher,* Attorney-general, *Neill Garrett,* Assistant Attorney-general, and *Roy E. Havens,* County Attorney, for appellee.

Wagner, J.—On February 22, 1927, a county attorney's information was filed, charging appellant with desertion, the crime designated in Section 13230 of the Code, 1927. It charges that  the appellant did willfully and without good cause neglect and refuse to maintain and provide for his wife and legitimate child, the latter being about 13 months of age, they being in a destitute condition. The period of delinquency alleged in the information is from October 24, 1926, until the time of the filing of the information.

The appellant relies for reversal upon three alleged errors. When the State rested, the defendant also rested his case, and his motion for a directed verdict was overruled; and this is the first matter which claims our attention. In passing upon this question, we will briefly refer to some of the testimony. The appellant is 23 years of age, and his wife 21. They were married in June, 1925, and the child was born the following September. At the time of the marriage, the appellant had no property, except an automobile. This newly married couple resided at the home of their respective parents until June, 1926, when they took up their residence at Denison, where the appellant had employment at a weekly wage of $20 and board. The parents of both the husband and wife reside in Harrison County. On October 24, 1926, the Andersons came to Harrison County, for the apparent purpose of making a visit to their respective parents. The wife became ill at the home of her parents the day of their arrival, and was confined to her bed for about two weeks.

The appellant remained at the home of his father-in-law for a day or two, and then returned to Denison. It appears that it was necessary for the Andersons to vacate the rooms at Denison which had been occupied by them up to that time. The appellant's wife testified that, upon his leaving:

"Well, I told him I wanted to have him get other rooms up there. I could come back just as soon as I was able, because the rooms we were occupying were going to be rented to someone else."

About a week later, the appellant returned to the home of his wife's parents for part of a day. Relative to a conversation between the appellant and his wife on the occasion of that visit, the wife testified:

"I asked him to get a place, and he said he wasn't certain of a job, and that he didn't think we would get along, and didn't see any use of getting another place."

The wife testified that she saw the appellant again just before corn-husking time, and she again asked him to get a place, and that he said that he didn't think that it was a wise plan, and that he hardly thought he could afford it. During the corn-husking period, the appellant husked corn for one Wallace, and for said service, according to his admission, which is in evidence, he received $6.00 per day. The appellant is able-bodied and in good health. A few weeks after October 24th, the appellant, his wife, and his wife's brother went to Omaha, for the apparent purpose of consulting a doctor relative to the wife's condition. The brother furnished the car, and paid the expenses of the trip. While there, the defendant's wife bought some clothing for the baby and a hat for herself, at the cost of $1.98, which the appellant paid. The day before Christmas, the appellant gave his wife $10. This amount, together with the aforesaid expenditure at Omaha, constitutes the entire amount of contributions by the appellant for the support of his wife and child since the 24th day of October, 1926. Neither the wife nor the child has any property, and their entire support, with the above exceptions, has been furnished by the parents of the wife, without any arrangements therefor by the appellant. About Christmas time, the wife had a talk with him, relative to providing a home for

her and the baby, and she told him that she would be willing to work too, so that they could provide a home for the baby; that she wanted him to get a woman (apparently to care for the baby), while she worked out; that she asked him to get rooms in Denison, and ''he said he wouldn't.'' After his arrest, in conversation with the wife, she told him that, if he got a home to live in, and would support her and the baby, she would drop the suit; and he responded that he could not afford to support them.

It appears that, sometime during the month of November, 1926, the appellant and his wife had a disagreement, at the home of his parents. The quarrel started because the baby kicked him, and the appellant made the request that she get out of there and let him alone, and the wife responded, ''All right, we will get out and stay out until you get us a home.'' Before she left for her father's home, the appellant offered her $5.00, which she refused. It is apparent from the record that, during the quarrel, the wife was imploring him to furnish her and the baby a home and support.

There is further testimony in the record, but to set it out would unduly extend the length of this opinion. The defendant offered no testimony in his behalf. Is the evidence such that the jury would be warranted in finding the appellant guilty of the crime charged? The statute, Section 13230 of the Code, provides that every person who shall, without good cause, willfully neglect or refuse to maintain or provide for his wife, she being in a destitute condition, or who shall, without good cause, willfully neglect or refuse to provide for his child under 16 years of age, said child being in a destitute condition, shall be deemed guilty, etc. It is our conclusion that there is evidence from which the jury would be warranted in finding every element of the crime. The wife and child were dependent upon the charity of the wife's parents, and were in a destitute condition, within the meaning of the law. See *State v. Weyant,* 149 Iowa 457; *State v. Herring,* 200 Iowa 1105; *State v. Sayre,* 206 Iowa 1334. The appellant had made no arrangement for a home or support to be furnished by the wife's parents to his dependents, as in *State v. Baugh,* 198 Iowa 897. The jury could well find neglect and refusal on the part of the appellant to provide for his wife and child the necessities of life, and this constitutes prima-facie evidence of willfulness upon his part. See Section 13235, Code, 1927; *State*

*v. Brodie,* 206 Iowa 1340. The jury could also find that his neglect was without good cause.

" 'Good cause,' as used in the legislative enactment, * * * means a substantial or legal cause, as distinguished from an assumed or imaginary pretense." *State v. Sayre,* 206 Iowa 1334.

The amount of appellant's entire contribution toward the support of his wife between October 24, 1926, and the time of the trial in September, 1927, was $11.98 and the cost of a few articles of clothing for the baby, purchased at Omaha. As hereinbefore stated, his heath is good, and he is able-bodied. He had been receiving as wages $6.00 per day. The disagreement as hereinbefore related at the Anderson home was not sufficient to constitute "good cause" for his continued failure to support his wife and child, and the trial court substantially so instructed. Under the record, he cannot rest secure upon his statement that he could not afford to support them. We are of the opinion that the question of guilt was for the jury, and that the court did not commit error in overruling appellant's motion for a directed verdict.

After the State rested its case, the appellant, in his motion for directed verdict, among other grounds, urged that there was no proof of venue. Thereupon, the county attorney asked leave  of court to reopen the case, for the sole purpose of showing that the prosecuting witness lived in Harrison County. The court granted the request, and it was then conceded of record that the prosecuting witness did live in Harrison County. It was a matter that rested largely within the discretion of the trial court, and we find no abuse of discretion. There was no reversible error at this point. See *State v. Case,* 96 Iowa 264.

The appellant excepted to the court's instruction on reasonable doubt, and the same is now urged as a ground for reversal. In this instruction, the court told the jury:

"All of the matters left for your determination are to be determined by you alone from the evidence before you, and after a full and careful consideration of the same."

All matters left for determination necessarily included the question of resonable doubt. Appellant's contention is that this

instruction did not include, but excluded, a reasonable doubt which might arise from lack or want of evidence. It is apparent that the appellant is right in his contention; for the court, in the instruction, in terse language, states that the question of reasonable doubt, as well as all other matters for their determination, is "to be determined by you alone from the evidence before you." We have repeatedly refused to approve an instruction on reasonable doubt which excludes a reasonable doubt arising from the lack or want of evidence. In *State v. Smith*, 192 Iowa 218, we said:

"This instruction [one on reasonable doubt] is complained of. It fairly states that a doubt, to be reasonable, must, for one thing, be caused by the evidence adduced. We cannot approve this."

In *State v. Smith*, 194 Iowa 639, we declared:

"Again, the instruction is faulty in advising the jury that a doubt must arise from a consideration 'of all the evidence in the case.' In *State v. Smith*, 192 Iowa 218, referring to an instruction of this kind, we quoted with approval the following from 16 Corpus Juris 997, Section 2411: 'As a general rule, an instruction that a reasonable doubt must be one suggested by, or arising out of, the evidence adduced is erroneous, as it excludes all reasonable doubts that may arise from the lack or want of evidence.' A reasonable doubt may, and generally does, arise from the lack or want of evidence in the case. We cannot approve of an instruction in this form."

In *State v. Tonn*, 195 Iowa 94, we find the following pronouncement:

"We cannot approve of this instruction. A reasonable doubt is not necessarily one that arises from a consideration of the facts and circumstances as shown *in evidence* in the case. A reasonable doubt, as a general rule, arises from a *want* of evidence."

In *State v. Flory*, 198 Iowa 75, we declared:

"We have repeatedly held that reasonable doubt may well

arise from lack of evidence, and that an instruction which omits this element will not be approved."

In *State v. Tennant,* 204 Iowa 130, we said:

"It is, of course, elementary that a reasonable doubt may arise from the absence of evidence * * *. Instructions on the subject of reasonable doubt should be so framed as to make it clear to the jury that a doubt may arise both from the absence of evidence and from the evidence introduced."

In *State v. Patrick,* 201 Iowa 368, the trial court gave the following instruction:

"You are to try and determine this case according to the evidence produced and submitted to you in open court on this trial, and the law given you in charge by the court in these instructions, and upon nothing else."

We there said of this instruction:

"Complaint is lodged against this instruction in that it unduly limits the jury in the consideration of the case, as far as the evidence is concerned. It says, in words, that the case is to be determined according to the evidence produced and submitted in open court and the law given in charge by the court, and upon nothing else. We are disposed to think that this complaint has merit. The jury has the right not only to consider the evidence before it, but to consider the want or lack of evidence. It is entitled to consider all fair and reasonable inferences and deductions which may be made from the evidence before it; but to say that it must consider only the evidence before it and the law as given by the court would apparently exclude from its consideration the above matter. If the instruction is to be given on a retrial of the case, it should be remodeled in accordance herewith."

It will be observed that the import of the instruction condemned in *State v. Patrick,* supra, is the exact equivalent of that portion of the instruction given in the instant case as a part of the instruction on reasonable doubt which is hereinbefore quoted. If, upon a retrial of the *Patrick* case, the court had given the condemned instruction, and an appeal had been taken to this

court, would there have been any hesitancy in reversing the trial court? The writer of this opinion is inclined to the belief that we would have unhesitatingly reversed the trial court for not following our directions. We condemned the instruction because it is erroneous, and the instruction in the instant case is subject to the same criticism and condemnation. We have declared in the foregoing pronouncements what we recognize to be the truth: that a reasonable doubt is not necessarily one that arises from a consideration of the facts and circumstances as shown in evidence in the case, and that a reasonable doubt, as a general rule, arises from a lack or want of evidence. We refuse to approve instructions on the subject of reasonable doubt which exclude the element of lack or want of evidence. If we do not or cannot approve an instruction, we necessarily disapprove it. When we disapprove or cannot approve an instruction, it is because it is erroneous. It is the duty of the jury to follow the instructions of the court. They are presumed to do so. Therefore, the jury, in the instant case, in following an instruction which we recognize as erroneous, arrived at a verdict of guilty. It cannot be successfully asserted that the error which is manifest in the instruction is a mere technical error or defect which does not affect the substantial rights of the defendant, as mentioned in Section 14010 of the Code. It was the right of the appellant to have a correct instruction given upon the subject of reasonable doubt,— one which did not exclude the element of lack or want of evidence. This court cannot be consistent by admitting that to be the right of the defendant, and by conceding that the instruction is erroneous, and then refusing to reverse on account of said erroneous instruction, which the jury is presumed to have followed in arriving at its verdict. The rights of the defendant should be protected, as well as the rights of the State. The rights of the State are not superior to those of the defendant.

For a period of nine years, we have repeatedly thrown out the warning, which appears to be unheeded. We can no longer refrain from reversing.

For the giving of the aforesaid erroneous instruction, the judgment of the trial court is hereby reversed, and the cause remanded. For further authority in support of this opinion, see

16 Corpus Juris 997, Section 2411, and cases there cited.—*Reversed and remanded*.

ALBERT, C. J., and STEVENS, FAVILLE, and GRIMM, JJ., concur.

KINDIG, DE GRAFF, EVANS, and MORLING, JJ., dissent.

KINDIG, J. (dissenting).—I think the instruction on reasonable doubt was sufficient. If the evidence was weak, there would be doubt. If, perchance, the testimony did not fully cover some fact, there would be doubt. If, finally, there was inadequacy anywhere in the evidence, there would be doubt. As a matter of fact, that is all the instruction contended for by the majority could ask of the jury.

DE GRAFF, J. (dissenting).—I heartily join in the dissent filed by Justice Kindig. A rule of the character involved herein must find its origin in logic and the rule of reason. I have no objection, and there can be no objection, to the use of the phrase "lack of evidence" in an instruction given by the trial court governing the question of reasonable doubt, but I hold that it is not *mandatory* on the part of a trial court to use the phrase "lack of evidence." True, this court for a few years past has suggested to the trial courts of this state, in opinions filed, that it is a better practice to use the phrase "lack of evidence" in an instruction governing reasonable doubt. During the judicial history of this state, we have never until now considered it reversible error for a trial court to omit this phrase in such an instruction. One possible exception exists. *State v. Smith*, 192 Iowa 218. This decision on this point should be overruled. We have repeatedly refused to follow it. We should continue to follow the pronouncement in *State v. Ritchie*, 196 Iowa 352, 1. c. 362, wherein the phrase "lack of evidence" was under discussion, and wherein Justice Weaver, speaking for the court, said:

"Indeed, the distinction between the two forms of instruction is somewhat over-refined and shadowy. A reasonable doubt, arising from the case as made by the evidence, implies an inquiry into the effect of the entire showing in support of the indictment, both its strength and its weakness; or, in other words, what the

evidence reveals and what it fails to reveal. A juror of average intelligence could not fail to understand the charge.''

The trial courts have said, in defining ''reasonable doubt,'' that the jury must find, from all the evidence in the case, and upon nothing else, that the defendant is guilty, beyond a reasonable doubt. Every crime charged in an indictment has certain essential elements, and it is the function of the court to explain to the jury these essential elements or factors, and when this is done, the jury is informed of the law of the case. Each of these essentials must be established on the evidence beyond a reasonable doubt; and in the consideration by the jury of the evidence bearing on these essentials, if there should be a lack of evidence, it logically follows that the jury, in considering the evidence, would find a lack of evidence, if there is a lack of evidence to sustain each and every essential element of the crime charged. The phrase ''lack of evidence'' is surplusage, or, if used, is simply precautionary. It adds nothing. In the instant case, the sufficiency of the evidence is not questioned. It is conceded that a jury question is presented; and to reverse the finding of the trial jury on the mere supposition that, in considering ''all the evidence, and nothing else,'' it did not consider the ''lack of evidence,'' is a most violent presumption. Such a claim is supertechnical; and in my judgment, the pronouncement by the majority is in the very teeth of the statute, since the statute provides that this court ''must examine the record, without regard to technical errors or defects which do not affect the substantial rights of the parties, and render such judgment on the record as the law demands.'' Section 14010, Code of 1927. I find no logical reason or legal basis for making mandatory the rule as announced by the majority.

EVANS and MORLING, JJ., join in dissenting.