No. 15,602.

LEWIS *v.* THE PEOPLE.
(166 P. [2d] 150)

Decided January 28, 1946.   Rehearing denied February 18, 1946.

Mr. MORTON M. DAVID, Mr. NATHAN I. GOLDEN, for plaintiff in error.

Mr. H. LAWRENCE HINKLEY, Attorney General, Mr. DUKE W. DUNBAR, Deputy, Mr. JACK L. GRAHAM, Assistant, for the people.

*En Banc.*

MR. JUSTICE ALTER delivered the opinion of the court.

ALICE RUBY LEWIS, plaintiff in error, to whom we hereinafter refer as defendant, was convicted of the crime of larceny by bailee and sentenced to a term in the penitentiary. To review that judgment she sued out a writ of error, assigning forty errors which she alleges were committed by the trial court to her prejudice.

The record, which we have read carefully, consists

of 2447 folios, and 192 exhibits offered in evidence during the trial. With our permission the abstract and briefs were typewritten.

It was charged in the information that on or about the 11th day of July, 1942, defendant became the bailee for safekeeping and return of numerous articles of personal property belonging to the prosecuting witness of a value in excess of $20.00, "and that while so the bailee thereof," she unlawfully and feloniously converted the same to her own use with intent to steal the same.

The evidence discloses that defendant was the exclusive manager and operator of a convalescent home at 2727 West 33rd avenue, in Denver, which was owned by her and another. The crime with which defendant was charged, and of which she was convicted, had to do with certain personal property belonging to Blanche Kingston, herein designated as prosecuting witness. Prior to July 24, 1942, the prosecuting witness had been a patient at the Denver General Hospital and on or about the date last mentioned became a patient at the convalescent home, where she remained until about September 13, 1942.

About July 15, 1942, defendant presented a written order, purporting to have been signed by the prosecuting witness, to the Weicker Transfer and Storage Company for the delivery to her of a trunk which had been stored with it by the prosecuting witness, and thereupon defendant secured possession of the trunk which was removed by her to the convalescent home. About September 2, 1942, defendant also secured possession of certain goods and chattels belonging to the prosecuting witness and which had been by her stored with the Santa Fe Moving and Storage Company.

February 10, 1943, defendant, through her attorney, made a written demand upon the prosecuting witness for the payment of "charges for storage and handling of your furniture, personal property and trunks which

are stored * * * at 2727 West 33rd avenue" amounting to $45.75 and advising her that unless that sum was paid on or before February 27, 1943, these articles would be sold for the purpose of paying the "lien for storage and handling."

February 27, 1943, the prosecuting witness paid defendant the $45.75 demanded, whereupon it is claimed that only part of the goods and chattels were delivered. Subsequently the prosecuting witness caused the issuance of a warrant to search the premises at 2727 West 33rd avenue, and under this warrant certain goods and chattels, which the prosecuting witness identified as her property, were taken into the possession of the constable. Thereafter the prosecuting witness caused a warrant to be issued in Jefferson county, authorizing the search of a certain cabin owned by defendant, and upon this search other goods and chattels, identified by the prosecuting witness as her property, were taken into the possession of the constable.

Under the search warrants issued in the City and County of Denver and Jefferson county, there was taken into the possession of the constables about 175 articles, all of which the prosecuting witness testified were her personal property and were by her stored with the Weicker Transfer and Storage Company and the Santa Fe Moving and Storage Company, the possession of all of which defendant had acquired and refused to deliver to her upon demand and payment of storage charges therefor. Defendant positively identified each of the articles taken under the search warrants and claimed ownership thereof.

At the conclusion of the people's case in chief, a motion for a directed verdict was interposed and denied, and at the conclusion of all the evidence in the case this motion was renewed, with like result. The motion for a directed verdict was based upon the ground that there were several distinct transactions embodied in the information and therefore the counts of the infor-

mation were duplicitous, and upon the further ground that the crime of larceny by bailee had not been established.

When the people's case in chief was closed, defendant interposed a motion to quash the information because: 1. It appeared from the evidence that there were two distinct transactions embodied in the information; 2. the defendant was on trial for more than one violation of the law involving separate and distinct transactions. This motion to quash was denied.

The only assignments of error which we deem of sufficient importance to merit our consideration are: 1. The court's refusal to direct a verdict for defendant at the conclusion of the people's case in chief and at the conclusion of all of the evidence; and, 2. the denial of the motion to quash the information. We will dispose of these assignments in that order.

■■ 1. The crime charged was larceny by bailee, and, in order to prove this offense, it was incumbent upon the people to establish by competent evidence beyond a reasonable doubt, not only a bailment, but a larcenous disposition of the articles bailed. "Bailment is the delivery of personal property by one person to another in trust for a specific purpose, with a contract express or implied, that the trust shall be faithfully executed and the property returned or duly accounted for when the special purpose is accomplished, or kept until the bailor reclaims it." Syllabus, *Tashima v. People,* 58 Colo. 98, 144 Pac. 200.

■ A bailee is one to whom personal property, which may be the subject of larceny, has been delivered, to be held for some stated purpose or object and which is to be returned to the bailor or delivered to some other person when the purpose or object has been accomplished or for the purpose of accomplishing the object.

The people offered in evidence the following:

"July 11-42

"Weicker Co: Send my trunk in storage to 2727 W-33rd-Ave Lady in charge will pay charges when Del. is made. Blanche Kingston."

This order, the prosecuting witness testified, was a forgery and no authorization whatever was thereby given to the Weicker Transfer and Storage Company to deliver the trunk to defendant. If this order was a forgery, any possession of the articles mentioned therein, acquired by defendant, was unlawful. The prosecuting witness testified that she first learned that defendant had possession of her trunk, on receipt of defendant's attorney's letter demanding payment for storage and handling charges. That fixed the date in February, 1943.

The people introduced evidence to establish that on September 2, 1942, property belonging to the prosecuting witness and by her stored with the Santa Fe Moving and Storage Company, came into the possession of defendant without her authorization or knowledge; and further evidence to the effect that the prosecuting witness first learned that these articles were in defendant's possession in February, 1943, after she had made inquiry at Weickers respecting her trunk and then learned that defendant had possession thereof.

February 27, 1943, as appears from the people's evidence, the prosecuting witness, in response to the notice served upon her by defendant's attorney, went to the defendant for the purpose of paying the charge for storage and handling claimed by defendant and to acquire possession of her goods and chattels then in defendant's possession. According to the people's evidence, defendant had paid the Weicker Company $4.25 for delivery and possession of the trunk and had paid the Santa Fe Moving and Storage Company the sum of $29.00 for the delivery and possession of the goods and chattels there stored belonging to the prosecuting witness, or a cash outlay of $33.25. Defendant, however, demanded,

and the prosecuting witness then paid, a storage charge of $12.50.

[4] Evidence that defendant demanded and received a "storage" charge for goods in her possession belonging to the prosecuting witness was competent to establish a bailment, and when the prosecuting witness paid the "storage" charge demanded by defendant, evidence thereof was competent to show that she, defendant, likewise deemed the transaction a bailment and herself a bailee. Defendant urges that since the prosecuting witness specifically denied any authorization given by her to defendant through which possession of the trunk and other goods and chattels were acquired, if defendant acquired possession, that possession was larcenous and not the possession of a bailee. In other words, defendant contends that the evidence established the crime of larceny, but not that of larceny by bailee.

Assume for the moment that defendant's position is legally sound and that the motion for a directed verdict based upon this contention should have been granted. Defendant did not stand on her motion when it was overruled, but thereafter definitely and positively testified that her possession of the goods and chattels involved was lawfully acquired at the request and by the authorization of the prosecuting witness. She thereby provided all the competent evidence necessary to establish a bailment, if her testimony respecting the bailment was believed—as it evidently was—by the jury. Where a motion for a directed verdict is interposed and should have been granted, overruling of the motion does not constitute prejudicial error if the defendant subsequently introduced the evidence necessary to supply the deficiency. *Brown v. People,* 61 Colo. 27, 155 Pac. 332; *Briggs v. People,* 76 Colo. 591, 233 Pac. 836; *Dickson v. People,* 82 Colo. 233, 259 Pac. 1038; *Bunch v. People,* 87 Colo. 84, 285 Pac. 766.

Under the record here, we need not determine whether the court committed error in refusing to grant

the defendant's motion for a directed verdict at the conclusion of the people's case because the defendant offered competent evidence to completely supply any defect in the people's proof.

2. Defendant next contends that her motion to quash the information should have been granted, and that the court's denial thereof constituted reversible error. In support of her position she relies greatly on our decision in *Trask v. People,* 35 Colo. 83, 83 Pac. 1010. We have carefully read and considered the original record and briefs in the Trask case, as well as our decision therein, and are of the opinion that counsel has misinterpreted that decision and has overlooked important and salient points therein which clearly distinguish it from the instant case and make the law announced therein inapplicable here. Attention is directed to the factual situation in the Trask case as set out in the opinion: "The evidence of the prosecution was to the following general effect: That the household goods and clothes were delivered on April 4, 1903, *for safekeeping;* that the white dress and black hat were delivered about April 15 under a separate bailment, *not for safekeeping, but for delivery to one Wilbur;* that the diamond ring was delivered about April 14, *for the purpose of pawning and raising money for the use of the prosecuting witness;* that certain moneys were delivered about April 20, for the *purpose of safekeeping and for the payment of the expenses of a trip of the prosecuting witness to Kansas City;* all of the foregoing deliveries having been made to plaintiff in error by the prosecuting witness." (Italics ours)

These facts establish *different* bailments of *different* articles for *different* purposes, with reference to which the opinion continues: "To the introduction of all testimony relating to the white dress and black hat, the diamond ring and the certain moneys, counsel for plaintiff in error objected, assigning as grounds of objection that the same was incompetent and that it appeared

that such testimony related to other, separate and distinct transactions."

With reference to these objections, the decision continues: "It is beyond question that the evidence objected to disclosed that there were several *separate and distinct bailments for different purposes, and that as many separate and distinct conversions with intent to steal had been committed,* and as conversion with intent to steal is the gravamen of the crime of larceny as bailee, it is clear that plaintiff in error, upon an information charging one offense, under the rulings of the court was forced to stand trial *for several separate and distinct offenses."* (Italics ours.)

A careful consideration of the factual situation in the Trask case and our decision therein clearly distinguishes that case from the instant one. Here, under the undisputed evidence, defendant procured possession of the prosecuting witness's trunk on July 15, 1942, for the purpose of *safekeeping.* She received goods and chattels belonging to the prosecuting witness on September 2, 1942, *for safekeeping.* These facts defendant admitted and may not now gainsay.

Defendant admits that both bailments were made for the identical purpose, and even though this admission was not readily made by defendant, the fact that she demanded and received payment on both bailed articles as one transaction conclusively established that she considered both transactions as *one* bailment for *one* purpose. The crime of which defendant was convicted was the conversion of the bailed articles, and when she converted them, but one offense was committed.

"It is said that the fifth count is duplicitous; that it charges five separate and distinct larcenies.

"No more than one offense should be charged in one count; but, by the great weight of authority, the stealing of several articles of property at the same time and place, as one continuous act or transaction, may be prosecuted as a single offense, although the several

articles belong to several different owners. * * *"
*Sweek v. People,* 85 Colo. 479, 483, 227 Pac. 1.

As we construe our decision in the Trask case, the motion to quash would have been properly denied notwithstanding the information alleged *four* bailments on *four* different dates, if all had been for the same purpose.

■ In the case here under consideration the people introduced evidence, and the verdict of the jury is conclusive of its belief therein, that defendant came into possession of the prosecuting witness's personal property for the purpose of storing the same, and that after acquiring possession she returned but a part thereof to the owner upon the payment by her of storage and handling charges, the unreturned goods and chattels being retained by defendant and unlawfully and feloniously converted to her own use. If the jury was convinced by the evidence beyond a reasonable doubt that the prosecuting witness was the owner of the goods and chattels obtained by the constables under search warrants and that the same had been taken into the possession of the defendant as bailee and then unlawfully converted to her own use, the verdict was right and the judgment thereon was correct.

The trial court did not commit error in its refusal to direct a verdict of not guilty at the conclusion of the people's case in chief, neither did it commit error in denying defendant's motion to quash the information.

We have examined the numerous other errors assigned but find them to be without merit. We believe defendant was accorded a fair and impartial trial.

Judgment affirmed.