No. 18,141.

EARL B. TUCKER *v.* PEOPLE OF. THE STATE OF COLORADO.

(319 P. [2d] 983)

Decided August 19, 1957.　Adhered to on rehearing January 13, 1958.

MR. CHARLES S. VIGIL, for plaintiff in error.

MR. DUKE W. DUNBAR, Attorney General, MR. FRANK E. HICKEY, Deputy, MR. JOHN W. PATTERSON, Assistant, for defendant in error.

*En Banc.*

MR. JUSTICE DAY delivered the opinion of the Court.

PLAINTIFF in error was the defendant in the county court of Boulder County and was found guilty by a jury of wilful failure to support four minor children under an information filed pursuant to C.R.S. '53, 43-1-1 to 10, inclusive. Motion for new trial was denied and judgment entered and sentence pronounced ordering confinement of the defendant in the state penitentiary for not less than six months nor more than one year. Sentence was suspended upon condition that defendant comply with a previous order of the district court by the terms of which defendant was to pay $150 a month for support of his four minor children. To the judgment and

sentence of the court defendant assigns error on the following points:

1. The county court had no jurisdiction.

2. The court erred in denying defendant's motion for directed verdict.

3. The court erred in giving instruction No. 6.

4. The court erred in allowing evidence to be heard by the jury concerning a pending criminal case against the defendant.

We will consider the points in the order named:

1. The jurisdiction of the county court is fixed by Article VI, section 23, of the Colorado Constitution as follows:

"County courts shall be *courts of record* and shall have original jurisdiction in all matters of probate, settlement of estates of deceased persons, appointment of guardians, conservators and administrators and settlement of their accounts, and such other civil and *criminal jurisdiction as may be conferred by law;* provided, such courts shall not have jurisdiction in any case where the debt, damage, or claim or value of property involved shall exceed two thousand dollars, except in cases relating to the estates of deceased persons." (Emphasis supplied.)

The statute conferring jurisdiction on the county court in non-support cases is C.R.S. '53, 43-1-4, the pertinent part of which provides:

"All courts of record in this state shall have jurisdiction under this article and a complaint or information for the violation of this article may be filed in *any court of record.* * * *" (Emphasis supplied.)

The constitution and statute together leave no doubt as to the jurisdiction of the county court. Counsel for the defendant urges one other point, to wit: that the order of the county court suspended sentence on condition that defendant comply with the district court order requiring payment of $150 per month, which, if made, would continue for ten years, and total the sum of $18,000. He urges that since the constitution limits the

jurisdiction of the county court to cases "where the debt, damage or claim or the value of property involved shall not exceed $2000.00" the county court was without jurisdiction. A careful reading of the order prescribing the conditions upon which the sentence was suspended, reveals that no payments were ordered to be made into the registry of the county court, the order merely providing that the defendant "comply with the orders of the district court in and for the county of Boulder for the payment of support."

2. At the close of the People's case, defendant moved for a directed verdict on the ground that the People failed to prove that the defendant *"wilfully,* neglected, failed or refused to provide reasonable support and maintence for the children under the age of sixteen years." Upon the denial of the motion the defendant offered evidence in defense. He testified that during the period involved he did not pay any amount for the support of his four children because during that period he earned $600 while in Arizona; $800 while in Colorado, plus $100 per week travel expenses from mid-September, 1955, to January, 1956; that he had to borrow money to take a trip to Pennsylvania to buy a better car; the reason he did not support his children was that all of his income was used to pay current living and traveling expenses, bond premiums and legal expenses. It has been repeatedly held by this court that where an accused moves for a directed verdict at the close of the People's case he is not entitled to have an adverse ruling on said motion reviewed in this court unless he stands on said motion. If he introduces evidence, the correctness of the ruling is determined from the state of the evidence at the end of the trial. *Lewis v. People,* 114 Colo. 411, 166 P. (2d) 150.

The court, passing on this particular point, said:

"Assume for the moment that defendant's position is legally sound and that the motion for a directed verdict * * * should have been granted. Defendant did not stand

on her motion when it was overruled, but thereafter definitely and positively testified that her possession of the goods and chattels involved was lawfully acquired at the request and by the authorization of the prosecuting witness. She thereby provided all the competent evidence necessary * * *. Where a motion for a directed verdict is interposed and should have been granted, overruling of the motion does not constitute prejudicial error if the defendant subsequently introduced the evidence necessary to supply the deficiency. *Brown v. People,* 61 Colo. 27, 155 Pac. 332; *Briggs v. People,* 76 Colo. 591, 233 Pac. 836; *Dickson v. People,* 82 Colo. 233, 259 Pac. 1038; *Bunch v. People,* 87 Colo. 84, 285 Pac. 766.

"Under the record here, we need not determine whether the court committed error in refusing to grant the defendant's motion for a directed verdict at the conclusion of the people's case because the defendant offered competent evidence to completely supply any defect in the people's proof."

■ In the case before us defendant, by his own testimony, disclosed that he was earning money during the period involved, that he was able to borrow, that he bought a better car. This testimony supplied any deficiencies of fact which the People's witness was unable to supply because of lack of knowledge and tended to prove, as provided by the statute, that his neglect was not "owing to physical incapacity or other good cause." C.R.S. '53, 43-1-1. In other jurisdictions where the term "good cause" for failure to support a child has been defined and applied, we find that a father's testimony that he had been in financial straits since the separation from his wife was not an excuse. *Poindexter v. State,* 137 Tenn. 386, 193 S.W. 126.

■ A showing that a father was capable of earning money and during the period in question earned good wages as a mechanic for at least four months was sufficient to show that a father's neglect was not "good cause" in *State v. Winterbauer,* (Mo. App.) 296 S.W. 219

(affirmed 318 Mo. 693, 300 S.W. 1071). In an Iowa case where the evidence disclosed that a father, able-bodied and actually earning some money at times, failed to support his child, the court said that the father could not rest secure upon his statement he could not afford to support the child. The court further held that the question of "good cause" was properly for the jury. *State v. Anderson,* 209 Iowa 510, 228 N.W. 353. "Good cause" is defined as a substantial or legal cause as distinguished from an assumed or imaginary pretense. *State v. Anderson,* supra; State v. Sayre, 206 Iowa 1324, 222 N.W. 20; *Dyer v. State,* 58 Okla. Cr. 317, 52 P. (2d) 1080; *State v. Langford,* 90 Ore. 251, 176 P. 197; *State v. Veering,* 187 La. 332, 174 So. 641.

■ The fact that defendant had other demands upon his income, including supporting a new family, and maintaining himself on the road as a salesman, does not constitute "good cause" as a matter of law so as to require granting of a motion for directed verdict. All of the elements necessary to establish the offense set forth in the information as well as defendant's excuses were before the jury. We think it sufficient to sustain the verdict.

3. The only instruction to which defendant objected was No. 6 and reads as follows:

"Every person mentally capable of knowing right from wrong in relation to his acts is presumed to intend to do that which he does do, and to intend the natural and probable consequences of his act. It is for the jury to determine the fact as to the defendant's intent, which may be shown by direct or by circumstantial evidence. Intent is an act or a purpose of the mind rarely discoverable except by the acts of the person. Intention is manifested by the circumstances connected with the perpetration of an offense, and the sound mind and discretion of the accused."

■ The statute provides that the *wilful* neglect, failure or refusal to provide reasonable support for a

minor child or children is an element of the offense. Therefore intent was material in the case, and it was proper for the court to instruct the jury on intent. The instruction was one that this court has approved numerous times, and is among the "stock" instructions given in criminal trials where intent is an element of the offense. See *Conyers v. People,* 113 Colo. 230, 155 P. (2d) 988.

4. On the question of the propriety of admitting evidence concerning a pending criminal case in the federal court, the record discloses that the defendant, himself, opened the door when he testified that among the expenses which made it impossible for him to support his children were the payment of legal fees and bond fees. Defendant, prior to that time had given considerable testimony concerning the litigation in which he had been involved during the divorce proceedings, and in volunteering the information that he had been forced to expend sums of money for attorney fees and bond fees without further explanation, left the inference with the jury that all of these expenses were occasioned by the litigation with his wife. The evidence concerning the pending federal case was elicited on cross-examination when the defendant was asked to explain about the bond fees. The questions and answers on this point are as follows:

"Q. All right, what was the other bond that you were talking about that you spent this money on? A. What do you mean? Q. Just what I said. A. Are you referring to the — MR. NEFF: Now just a moment — I hate to be objecting all the time — THE COURT: Is there more than one bond that you are referring to in Boulder? A. No, I'm just referring to one. MR. DOLAN: I didn't say in Boulder. If it please the Court, he argued that he — his testimony was where all his money was going to pay attorneys' fees and both of the bonds that he was under at the time he was brought up here and I want to know what are both the bonds? A. I didn't say both

bonds. THE COURT: Let's not argue about words, you stated now there was one bond here in Boulder, he said he was denied bond or failed to make bond in Arizona. MR. DOLAN: If it please the Court, that isn't the bond I am referring to. The time's in January — Mr. NEFF: Now, just a moment. I'm going to object to this line of questioning, if your Honor please. The only purpose is to bias the jury — (Indistinguishable.) THE COURT: Well the objection would have to be overruled. He's offered the testimony that he spent certain sums for bonds and that's the subject of this inquiry. Now would you go ahead and explain what money you spent to obtain bonds? A. Well, besides this bond here on this charge, I have bond for — federal bond, is that what you meant? Q. You ought to know, you made the statement. A. I didn't say anything about it, you did. Q. What's the federal bond for? MR. NEFF: This is immaterial and irrelevant, having no probative value so far as this case is concerned. THE COURT: The objection is sustained, except as to the cost of it. Q. All right what is that, what was the cost of it. A. The cost was a hundred and fifty dollars. Q. Was that a cash bond? A. No, just bond fee. Q. That's a bond fee? A. Yes. Q. What was the amount of the bond itself? A. Fifteen hundred."

This testimony was not prejudicial, was within the scope of direct examination and pertinent to matters raised by the defendant in his direct testimony.

The judgment is affirmed.

MR. JUSTICE HOLLAND does not participate.

MR. JUSTICE FRANTZ specially concurs.

MR. JUSTICE FRANTZ specially concurring:

Although Mrs. Tucker is not a party to this suit, she verified the information filed against Mr. Tucker charging him with violation of the non-support statute of this state. C.R.S. '53, 43-1-1, et seq. This type of proceeding

is sui generis, and because of its nature and character, and the relief that may be afforded thereunder, the wife occupies a status different from that of a complainant in other criminal cases. Recognizing this difference, I am prompted to make comment concerning this particular case.

I yield to the majority opinion reluctantly because, as I view this case Mrs. Tucker has been infinitesimally within the bounds of the law on a number of occasions. A reading of the record persuades me that she has used the law at times as a means of harrying Mr. Tucker, and even impairing his ability to perform his obligations toward her and their children. The pattern of her conduct engenders more than a shadowy inference of her motives.

Nevertheless, she has resorted to legal measures, ostensibly for legal ends. If many of her actions, affecting Mr. Tucker, were motivated by malice or an intent to make his life unpleasant and to disable him in the performance of his obligations, she knows whether this is true while I can only entertain an inference of the fact.

I can only remind her that in the law no person can build successfully a superstructure of right on moral wrong.

MR. CHIEF JUSTICE MOORE and MR. JUSTICE HOLLAND concur herein.